# Commonwealth *v.* Scovern, Appellant.

*Criminal law—Murder—Insanity—Appointment of commission under Act of July 11, 1923, P. L. 998—Discretion of court—Acts of March 31, 1860, P. L. 427, and May 14, 1874, P. L. 160.*

1. A person, who, by reason of insanity, is unable to comprehend his position and to make a rational defense cannot be tried on a criminal charge while in that condition.

2. The question of the prisoner's insanity must be determined either by a preliminary examination or by the jury which tries the indictment.

3. At common law the preliminary question of the prisoner's insanity was for the trial judge within his legal discretion.

4. If the judge believed doubt to exist, he might order the fact of insanity to be tried by a special jury, or by the jury which was to try the indictment.

5. The Acts of March 31, 1860, P. L. 427, and May 14, 1874, P. L. 160, did not change the common law to the extent that it would prevent the court from submitting the question to the jury which tried the indictment.

6. The Mental Health Act of July 11, 1923, P. L. 998, applies to persons waiting for trial, but does not compel a judge to order an inquiry as to sanity in all cases where an application is made.

7. It is only where a real doubt exists in the mind of the trial judge, as to the sanity of the prisoner, that it becomes his duty to follow the provisions of the Act of 1923, by ordering an inquiry by two qualified physicians or a commission who shall make a report. Every step taken in such proceeding is merely to inform the conscience of the judge.

8. The action of the judge in refusing an inquiry will not be deemed an abuse of discretion, where it appears that the judge observed the prisoner in the court room, made an investigation of his mental state, received reports from the jail warden, and an alienist, and found that the prisoner did not appear to be insane.

*Criminal law—Murder—Corpus delicti—Evidence.*

9. Corpus delicti consists of a criminal act, resulting in death, and the agency of the accused in its commission.

10. It is immaterial that the death of the victim may have resulted from a disease superinduced by a wound inflicted by the prisoner, or from an operation deemed necessary to save the victim's life.

*Criminal law — Murder — Insanity—Evidence—Charge—Words and, phrases—"Clearly."*

11. A verdict of guilty of murder of the first degree will not be set aside because the trial judge charged that "the presumption of the law is that every man is sane, and that presumption continues until the defendant establishes by clearly preponderating testimony his insanity, although he is not required to establish that fact beyond a reasonable doubt," where it appears that the use of the words complained of could not have injured the defendant.

12. The word "clearly" as used in the charge had reference to the quality of the evidence in the sense of being intelligible and understandable as opposed to ambiguous or uncertain. It was not used as a word denoting weight or quantity.

*Criminal law—Murder—Charge—Appeal—Assignments of error.*

13. A few words of a charge should not be segregated and assigned as error, when the charge as a whole does not show error.

*Criminal law — Murder — Special venue—Sheriff's deputy—Act of May 17, 1917, P. L. 237.*

14. Under the Act of May 17, 1917, P. L. 237, a deputy sheriff may execute a special venire directed to the sheriff.

*Criminal law—Murder—Verdict—Procedure in taking verdict.*

15. Where a jury in a murder case has been polled and the verdict given orally as their finding, it is immaterial that a written verdict to the same effect was recorded.

16. The practice in taking the verdict as followed in Com. v. Schmous, 162 Pa. 326, approved.

Argued October 5, 1927. Before MOSCHZISKER, C. J., WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 259, Jan. T., 1927, by defendant, from judgment of O. & T. Northumberland Co., Feb. T., 1926, No. 2, on verdict of guilty of murder of first degree with penalty of death, in case of Commonwealth v. Leon Scovern. Affirmed.

Indictment for murder. Before STROUSS, P. J.

The opinion of the Supreme Court states the facts.

Verdict murder of first degree with penalty of death, on which sentence was passed. Defendant appealed.

*Errors assigned* were various rulings and instructions, quoting record.

*S. L. Gribbin,* with him *D. W. Kearney,* for appellant.—A commission should have been appointed to inquire into defendant's mental condition.

The court erred by instructing the jury that death resulted from the wound and the effort to cure it.

Defendant is not required to establish his insanity by clearly preponderating testimony: Coyle v. Com., 100 Pa. 573; Com. v. Molten, 230 Pa. 399; Com. v. Ross, 266 Pa. 580; Com. v. Divomte, 262 Pa. 504; Com. v. Gerade, 145 Pa. 289.

A deputy sheriff cannot execute a special venire issued to the sheriff: Pa. R. R. v. Heister, 8 Pa. 445.

The verdict as recorded is the verdict of the jury, and the form prepared in the jury room, though handed to the clerk, is no part of the record, and has no significance: Com. v. Haughton, 22 Pa. Superior Ct. 52; Com. v. Breyessee, 160 Pa. 451; Dornick v. Reichenback, 10 S. & R. 84; Reese v. Stille, 38 Pa. 138; Scott v. Scott, 110 Pa. 387; Walters v. Junkins, 16 S. & R. 414; Com. v. Mills & Adams, 3 Pa. Superior Ct. 161; Com. v. Schmous, 162 Pa. 326.

*Edward Raker,* District Attorney, with him *J. A. Welsh,* for appellee.—The court did not err in refusing to appoint a commission to inquire into defendant's mental condition: Com. v. Barnes, 280 Pa. 351; Webber v. Com., 119 Pa. 223; Com. v. Endrukat, 231 Pa. 529; Com. v. Cavalier, 284 Pa. 311.

It mattered little whether the deceased died of pneumonia or suppurated splenitis, if either, or both were superinduced by the bullet wound inflicted by defendant, or from an operation necessary in an effort to cure deceased: Gray v. Com., 101 Pa. 380; Com. v. Gardner, 282 Pa. 458; Com. v. Puglise, 276 Pa. 235; Com. v. Sheffer, 218 Pa. 437; Com. v. Bishop, 285 Pa. 49, 53.

OPINION BY MR. JUSTICE KEPHART, November 28, 1927:

Appellant was convicted of murder of the first degree, and the jury fixed the penalty at death.  When arraigned for trial, his counsel moved for a stay of proceedings and the appointment of a commission to preliminarily inquire into the prisoner's present mental condition.  The petition by the resident jail physician, supported by the affidavit of an alienist, was under section 308 of the Mental Health Act of 1923, P. L. 998, and stated defendant was not sane enough to make defense. The Commonwealth objected to the appointment of a commission and the court below held that the prisoner's sanity should be determined by the jury at the trial of the indictment.  The question before us is whether, under the circumstances, there was an abuse of discretion in refusing to appoint the commission, or whether a prisoner has in any case a legal right, under the Act of 1923, to demand an inquiry into his sanity.

A person who, by reason of his insanity, is unable to comprehend his position and to make a rational defense cannot be tried on a criminal charge while in that condition.  There must be reasonable grounds on which to base an inquiry as to insanity, and a method of ascertaining the fact.  At common law, when the question of defendant's sanity at the time of trial was raised in any case, the preliminary question was for the trial judge within his legal discretion; the court, believing doubt exists, may order the fact to be tried by a special jury impaneled for that purpose, or by the jury which is to try the indictment: Webber v. Com., 119 Pa. 223.

There are three statutes which might affect this question.  They are the Act of March 31, 1860, P. L. 427, 445, commonly known as the Criminal Procedure Act; the Act of May 14, 1874, P. L. 160; and the Act of July 11, 1923, P. L. 998, known as the Mental Health Act, which repealed and supplied the Act of 1874.  The earlier English statutes relating to the subject were adopted by the Act of 1836, and later embodied in the

Criminal Procedure Act. Sections 66 and 67 of that act deal with the question of insanity. Section 66 directs that, where a prisoner is acquitted by a jury on the ground of insanity, the jury shall so declare specially, and the court shall order him to be kept in strict custody as long as he continues to be of unsound mind. Section 67 provides that, if a prisoner appears to be insane upon arraignment, the same proceedings outlined in section 66 may be had. It was definitely settled in Webber v. Com., supra, that this act did not change the common law to the extent that it would prevent the court from submitting the question to the jury which tried the indictment, and this seems to be an eminently reasonable and logical construction of the statute.

The Act of 1874, supra, provides a new method for determining the question of insanity. Section one reads: "Whenever any person [is] convicted of any crime . . . . . . or charged with any crime and acquitted on the ground of insanity, application . . . . . . may be made by the warden . . . . . . to the court . . . . . . which application shall certify . . . . . . such prisoner is believed to be insane, . . . . . . whereupon it shall be lawful for any judge . . . . . . to appoint a commission of three citizens . . . . . . to inquire into and report upon the mental condition of such prisoner."

The act applies to a person "convicted . . . . . . or charged with any crime and acquitted on the ground of insanity." The act is not mandatory. It says that "it shall be lawful for . . . . . . [the court] to appoint a commission,"· but does not command this to be done. This statute has not changed the common law rule. The question of insanity at the time of trial has since been submitted to the jury which tried the indictment: see Com. v. Endrukat, 231 Pa. 529.

The Mental Health Act of 1923 was a revision and codification of previous legislation with respect to insanity. Section 308 reads as follows: "When any person detained in any prison . . . . . . waiting trial . . . . . .

shall, in the opinion of the superintendent, jail physician, warden, or other chief executive officer of the institution or other responsible person, be insane,......
the......superintendent......shall immediately make application........to a law judge......for a commitment of [the]......person to a proper hospital......
The said judge shall......order an inquiry by two qualified physicians, or by a commission......who shall
......make written report......if, in their opinion, the person so detained is insane......The said judge may, in his discretion, summon other witnesses and secure further evidence. If he is then satisfied that the person thought or alleged to be insane is in fact insane, he shall order......removal."

In applying the act to the present case, we must carefully ascertain how far the legislature intended to modify the old law. It applies to persons waiting trial (which the prisoner was), but does the language used compel a judge to order an inquiry as to sanity in all cases where an application is made? Prior to the Act of 1923, the decision as to whether or not the prisoner's sanity should be inquired into rested in the sound discretion of the trial judge. The legal test was, the doubt of the trial judge as to the sanity of the accused. Motions, pleas or petitions did not of themselves raise the doubt, but observation, examination, public or private investigation, might raise it. When the doubt existed, the trial judge determined the method of finding the fact. The Act of 1923 offers a new method of determining the fact, but not an exclusive one. The act did not abolish the common law steps necessary before the new or additional method was put in operation. Under the Act of 1923, before the prisoner is committed, the judge must be satisfied he is insane. The act reads, after a report is submitted finding the prisoner is insane, "The judge may......secure further evidence. If he is then satisfied [the prisoner] is in fact insane, he shall order......removal." Approval of the findings

of the inquest are not compulsory; it is within the sound legal discretion of the court. If the report is disapproved, which means the judge is not satisfied, the prisoner may be tried. If, where a petition is presented, the court must ultimately be satisfied of insanity, is it not fair to assume that the legislature intended that the facts and circumstances averred or known should be such that the court would ultimately approve an order of sanity based on such facts and circumstances? This must be so, as it is not to be supposed the legislature intended the judge to do a vain thing. The common law step necessary to start the investigation has not been abolished, and it is only when a real doubt exists in the mind of the trial judge that it becomes his duty to grant the inquest. Once the doubt exists, originating by petition under the act or otherwise, every step taken thereafter through any channel is merely to inform the conscience of the judge.

If the judge was compelled, under the Act of 1923, to grant an inquiry in all cases, the act would be used as a subterfuge to escape prompt and speedy trials, as the proceeding could be prolonged with little power in the court to stop or order the inquest returned. The legislature had no intention to thus hamper the administration of its criminal laws. The court, as a matter of public policy in the interest of society, charged with the responsibility of administering the criminal law, should not be hindered in its effort to bring the prisoner's case to speedy trial; it should not permit any but a just and sufficient cause to delay the trial. In Com. v. Barnes, 280 Pa. 351, 355, where a petition for an inquest as to sanity was dismissed, we said: "Taking into account ......the substantial weakness of the allegations concerning appellant's mental condition, we cannot say that tribunal erred in dismissing the petition, whether it be considered as an application at common law...... or as a statutory proceeding."

The trial judge is not compelled to grant an inquest in all cases, nor did he abuse his discretion in refusing the petition for the appointment of a commission in this case. He observed the prisoner in the court room, made an investigation of his mental state, received reports from the jail warden, and an alienist, and those having defendant in charge, and found, as stated in the opinion overruling motion for new trial, the "conduct of the defendant......showing nothing more than that he was of mean disposition and ever sought to impose his will upon those with whom he came in contact." We have carefully read the evidence and approve the finding.

The second assignment of error complains that the corpus delicti was not clearly established. Corpus delicti consists of a criminal act, a resulting death, and the agency of the accused in its commission. It must appear that deceased died from the effects of a wound, unlawfully inflicted by the person charged: See Wharton on Homicide, 3d ed., p. 897. All of these elements were present in this case. We need not recite the evidence. Proof of corpus delicti is not weakened by the fact that the medical testimony shows a disease or various diseases, the product of the wound itself, combined to produce death. It was of no consequence that the deceased died of pneumonia or suppurated splenitis, if either were superinduced by the bullet wound, or from the operation deemed necessary to save the victim's life: Com. v. Eisenhower, 181 Pa. 470. The jury was instructed that if they had "any doubt as to whether or not the bullet wound......directly caused the death ......[the defendant should have] the benefit of that doubt......you [must] find beyond a reasonable doubt that the defendant inflicted the bullet wound......and that such bullet wound was the direct cause of the death." Defendant was amply protected by this instruction.

There is some doubt as to the correctness of the third assignment, setting forth the instruction of the court

that "It is, likewise, the presumption of the law that every man is sane, and that presumption continues until the defendant establishes, by clearly preponderating testimony, his insanity, although he is not required to establish that fact beyond a reasonable doubt." The defense being insanity when the crime was committed, the court below refused to certify this record because the trial judge insisted the word "clearly" had not been used. But, even if it was, there was no harm done the defendant. In Coyle v. Com., 100 Pa. 573, 580, we had before us the following instruction: "The law presumes sanity when an act is done, and that presumption can only be overthrown by clearly preponderating evidence." We said that insanity must be satisfactorily proved, but that the use of the term "clearly preponderating evidence" to overthrow the presumption of sanity laid too heavy a burden on the accused, demanding a higher degree of proof than the authorities require; that the proper term was "fairly preponderating" and the use of "clearly" was practically saying that insanity must be proved beyond all doubt or uncertainty. But in this case the jury was told in the same sentence that defendant was "not required to establish......[insanity] beyond a reasonable doubt." Here the court below drew a sharp line between Coyle v. Com., and the instant case, leaving an open field for the jury to work in. "Clearly," as used by the trial judge in this case, does not mean that insanity must clearly appear; if it did, the words following would have no meaning. It does mean that the evidence to show insanity should not be obscure. The word has reference to the quality of the evidence in the sense of being intelligible and understandable as opposed to ambiguous and uncertain. It was not used as a word denoting weight or quantity. Had counsel thought the jury was confused, more specific instructions should have been requested, for the court asked at the close of the charge if counsel wished any further instructions. The assignment is without merit.

The fourth assignment complains that the court fixed in its charge too high a measure of proof to establish insanity. The test claimed to have been set by the court was defendant's ability to distinguish between right and wrong in the abstract, whereas, right or wrong with reference to the particular act is the guide. But the judge's instruction as it relates to the subject is a careful exposition of the law.. It set up as a test, defendant's ability to distinguish between right and wrong with reference to the particular crime at the very moment of its commission. Counsel should not segregate a few words of the charge and assign it as error when the charge as a whole does not show error: Com. v. Bryson, 276 Pa. 566; Com. v. Wireback, 190 Pa. 138, 146.

May a deputy sheriff execute a special venire directed to the sheriff? The Act of 1917, P. L. 237, provides that where the sheriff is required by law to act in person under any writ of inquisition or any other writ or process issued by the courts in this Commonwealth, he may act either in person or by a regularly appointed deputy. A special venire was used because of the large number of challenges. It is appellant's contention that, under the Act of April 14, 1834, P. L. 366, sec. 144, the coroner or two citizens should be appointed to summon and return the jurors from the bystanders or from the county at large in the absence or inability of the sheriff to act. See Pa. R. R. Co. v. Heister, 8 Pa. 445, 452. The Act of 1917 is clear on the subject; the deputy sheriff. may summon special venires of jurymen.

We are not impressed with the objection to the form and manner in which the verdict was taken. It is true, the court below did not strictly follow the procedure approved in Com. v. Schmous, 162 Pa. 326, 336, but it did so substantially. If anything was omitted, it was a mere formality. When the jury came in, the clerk inquired, "Gentlemen of the jury, have you agreed on your verdict?" The foreman replied, "We have," handing a paper to the clerk. It was their verdict. It was handed

to the court and returned to the clerk who read it. It found the defendant guilty of murder of the first degree with the death penalty attached, and that he was sane at the time of trial. Counsel for the defendant asked to have the jury polled. This was done and the jury orally announced they found the defendant guilty of "murder of the first degree with death penalty." Complaint is made that the written verdict should not have been recorded, not being part of the record. This, it is said, was error, as defendant should have been given an opportunity, before reading the verdict, to have requested a poll of the jury. Counsel had that opportunity; nothing prevented his making the request. But had the request been made, it would not have been error to have proceeded as the court below did. No right of defendant was denied. The jury was polled and the verdict as orally given was their finding. There was no exception to this manner of proceeding. The manner of so delivering verdicts in homicide cases has been the unbroken practice in Northumberland County. It might be well to follow the practice laid down in Com. v. Schmous, supra, but a slight deviation from the procedure there approved will not be considered reversible error.

The Act of 1870 requires us to ascertain from the record if all the ingredients of murder of the first degree are present. Defendant was desirous of keeping company with a young girl. Her father objected to the attention, and, on different occasions notified him to keep away from his daughter, the last notice being served on him by a constable. He left home early January 3d, going toward the church, two miles distant. He was looking for the girl. Not finding her at church, he proceeded toward a street which he knew she must pass. She came along shortly thereafter, accompanied by three other girls. He forced her to return to her home with him. On the way, they met the girl's two brothers, John and Joseph, and they too returned home, ahead of their sis-

ter and Scovern.  As soon as he got to the gate of her home, the mother, who had been advised by the brothers of his coming, asked him what he wanted, and he, searching for what was supposed to be the constable's notice, asked, "Could you not tell me by words?"  The father came on the porch and told his daughter to go into the house.  The words were scarcely uttered when the prisoner shot the father, breaking the bridge of his nose.  John, the brother, ran out of the house, and he fell from a shot in the abdomen.  Joe, the other brother, came to the door and was shot down by Scovern, the bullet entering the left side, below the heart.  The mother took refuge behind a shed.  Scovern took Mary by the hair, turned her head around and deliberately placed the gun back of her ear and fired, inflicting a serious wound.

He fled and was afterwards captured.  The injured persons were taken to the hospital and Joseph died seventeen days after being shot.  The rest recovered.  The evidence discloses all the essential ingredients of murder of the first degree.  There are no reversible errors in this record.

The judgment of the court below is affirmed with directions that the record be remitted to the court below for the purpose of execution.