Commonwealth *v.* Crow, Appellant.

92

Argued November 24, 1930. Before FRAZER, C. J., WALLING, SIMPSON, KEPHART, SADLER, SCHAFFER and MAXEY, JJ.

*Robert C. Hoerle,* with him *Ernest F. Walker,* for appellant.—The evidence was insufficient to sustain the verdict: Com. v. Andrews, 234 Pa. 597.

The court erred in overruling defendant's objection to testimony of witnesses.

The court erred in refusing defendant's motion to withdraw a juror and continue the case because of the manner in which talesmen were selected and called.

It was reversible error for the trial judge to refuse to instruct the jury that codefendants in a murder case could not be called as witnesses on behalf of one separately tried.

*D. P. Weimer,* for appellee.—The fact that an article was kept for an unlawful purpose, such as intoxicating liquors kept for sale in violation of law, or gambling paraphernalia, the possession of which is prohibited, does not affect its character as property, and as such it is a subject of larceny: Osborne v. State, 115 Tenn. 717.

Where two or more join in a robbery, they are all liable if a homicide is committed in the course thereof, by any one of their number: Com. v. Lessner, 274 Pa. 108; Com. v. Flanagan, 7 W. & S. 415; Com. v. Micuso, 273 Pa. 474; Com. v. Lawrence, 282 Pa. 128.

The court was correct in its rulings on evidence: Com. v. Del Vaccio, 299 Pa. 547; McHugh v. McHugh, 186 Pa. 197.

There was no error in the refusal of a challenge for cause of the juror. This was a matter in the sound discretion of the court below: Com. v. Sushinskie, 242 Pa. 406; Com. v. McCloskey, 273 Pa. 456.

OPINION BY MR. JUSTICE WALLING, March 16, 1931:

The defendant, Carl Crow, together with Frank Cantilla and Frank Powell, were jointly indicted, but, on their election, separately tried for the murder of Louis Hoffman. Each was convicted of murder of the first degree and as to each the jury fixed the death penalty,

and from sentences imposed by the court each defendant has brought an appeal. We will first consider the appeal of the defendant, Carl Crow. The deceased's father, George Hoffman, resided on a farm in Adams Township, Cambria County, about eleven miles from Johnstown, upon which in 1927 and 1928 alcoholic liquor was illegally manufactured. It is proper to say that the deceased did not reside upon the farm and, so far as appears, had nothing to do with the liquor business there conducted. Crow, during the same time, was engaged in a similar business on a near-by farm, referred to as the Wissinger farm. Stating the facts as shown by the Commonwealth's evidence, as we do in these cases, it appears that before leasing the Wissinger farm, in the fall of 1927, Crow made inquiries looking to obtaining the Hoffman farm for the same purpose. In May, 1928, officers raided the defendant's place on the Wissinger farm and broke up his business there, and it was shown that Crow said it cost him a thousand dollars and that he would make it cost someone else two thousand dollars, and he said he wondered why they did not raid the Hoffman place. The evidence is that several barrels of whiskey were stored on the Hoffman farm sometime late in 1927 and possibly in the early months of 1928, and on July 12th of that year, Crow and perhaps other defendants drove over to this farm apparently in search of liquor.

Two days later, on Saturday afternoon, July 14, 1928, the three defendants above named, together with Tony Polumbo, Joe Parsi, Sam Brooks and two young girls left Johnstown in three automobiles and drove out to near the entrance of the lane leading to the Hoffman farm. There the girls were directed to or at least did leave the cars. About the same time Cantilla obtained Parsi's revolver, and the men with the cars, containing a number of large empty tin cans, drove toward Hoffman's. The cars, however, were stopped perhaps a quarter of a mile from the buildings on the Hoffman farm, to

which Cantilla, Powell and Polumbo went on foot, while Crow, Parsi and Brooks apparently remained at or near the cars. Cantilla and his two companions on arriving at the farm about sundown found the deceased, Louis Hoffman, and two of his brothers there and ordered them to disclose where the whiskey could be found. The Hoffman brothers seemed to deny that whiskey was there concealed or at least told Cantilla and his companions that they might have any they could find. Whereupon the latter lined up or attempted to line up the Hoffman brothers and again demanded information as to the location of the whiskey. Failing to get it, Polumbo struck the deceased with the butt of his revolver and with his two confederates began shooting at the Hoffmans, firing in all some ten or twelve shots, several of which took effect. Louis was killed outright and his brother Herman seriously wounded. The brother Homer escaped by flight. The shooting was near the barn and Mrs. Hoffman came from the house, discovered one of her sons dead and another wounded, and had the farm bell rung as an alarm. Thereupon the assassins ran back to their cars and, with their confederates, started at high speed for Johnstown. As they passed the two girls, Cantilla brandished his revolver and threatened them with death if they disclosed what they knew of the affair. The girls later caught a ride back to Johnstown. Crow did not personally participate in the shooting, but that he came to the immediate locality with those who did, was shown not only by the testimony of the two girls who were in the party, but also by two ladies, Mrs. Varner and her daughter, who saw him driving one of the cars in the direction of the Hoffman farm and later heard the shots and the alarm bell. They were clear as to his identity, having become acquainted with him when he was on the Wissinger farm.

The defense was an alibi. Crow testified that he drove over to South Fork late that afternoon and on his return spent the evening in Johnstown, and was not out with

the party nor near the Hoffman farm that afternoon and called witnesses in support of this contention. The appeal raises a number of alleged trial errors. The Commonwealth conducted the case upon the theory that this was a homicide committed in an attempt to perpetrate a robbery. The trial judge left to the jury the question as to whether the homicide was committed in an attempt to perpetrate a robbery and stated that if they so found it would be murder of the first degree. Whether the intent of the defendants in the instant case was to forcibly take and carry away the liquor was for the jury. See Com. v. Doris, 287 Pa. 547. It was proper for the trial judge to call the jury's attention to the claim of the Commonwealth that it had offered testimony to an attempt to commit a robbery of the liquor and also testimony tending to connect the defendant therewith. The judge did not say there was an attempted robbery or if there was that the defendant was a party thereto. The trial judge, however, left the degree of the crime as well as the question of guilt to the jury. In our opinion, there was sufficient evidence to support a finding of an attempt to commit robbery. One of the party on the way out that afternoon said they were going for the whiskey and if they failed to get it there would be trouble. They knew the farm was inhabited and looked for the whiskey near the buildings, yet they went in the day time, when in all probability they must use force or create fear to obtain it. Had the intent been merely to steal the whiskey they would naturally have gone in the night. Again the three men were armed with deadly weapons and something of the intent may be inferred from the fact that they at once undertook to obtain a disclosure of the property, apparently with intent to take it by violence. There is nothing to indicate that Crow, who, it is claimed, was the leading spirit, had any different thought from that shown by his companions. If Crow was in the conspiracy to commit a robbery of the whiskey, the fact that he remained a few hundred

feet away was of no moment, for all were equally guilty. He may have been a principal in the second degree, but if an accessory before the fact, he was, under the statute (see Act of March 31, 1860, P. L. 440, paragraph 44), subject to indictment, trial and punishment in all respects as a principal felon. All who join in planning a robbery are guilty of a murder committed in an attempt to perpetrate it, whether present or not. See Com. v. Major, 198 Pa. 290. In fact, the defendant claimed no immunity on the ground that he went out with the party but was not at the actual scene of the crime, or that the intent was merely to steal the whiskey. What he claimed was that he did not go out with the party and knew nothing of the intended crime. If the defendants thought the whiskey was there and intended to take it by violence, it is not material whether in point of fact it was there. It is sufficient that it had been and that they thought it was there still. It is no defense to an attempt to rob that the victim has no money.

Furthermore, it is as clearly robbery to take property from the presence or control of a party by violence or putting him in fear, as if taken from his person. If the intent was to so take the whiskey from those who had it in charge, the intent was to commit a robbery. Robbery may be committed by taking property from the presence or control of another as well as from his person: Com. v. Dantine, 261 Pa. 496. An attempt is an overt act done in pursuance of an intent to do a specific thing, but falling short of completion: Com. v. Eagan, 190 Pa. 10; or as defined in 8 R. C. L. 277: "An indictable attempt, therefore, consists of two important elements: first, an intent to commit the crime; and, second, a direct ineffectual act done towards its commission. It will be observed that a failure to consummate the crime is as much an element of an attempt to commit it as the intent and the performance of an overt act towards its commission." To try to compel the parties to disclose the hiding place of the liquor so that it might be carried away against

their will was an attempt to rob as much as would be the act of a bandit in trying to force a bank cashier to unlock the safe that he might take its contents by violence or putting in fear.

Liquor even when held unlawfully, is property and the subject of larceny. "In respect to intoxicating liquors, manufactured or kept for sale in contravention of prohibition statutes, it has generally been held that, notwithstanding the statute, such liquors are the subjects of larceny": 36 C. J. 747, paragraph 42. To establish the rule that the owner of liquor, illegally held, had no property right therein, would lead to a condition of terror and bloodshed among rival bootleggers far worse than we have known.

It was proper to show what inquiries Crow made as to liquor kept upon the Hoffman farm even as far back as the fall of 1927. It was part of the history of the case and indicated his knowledge of the conditions there with reference to liquor. And there was no legal objection to showing that he or Cantilla, his confederate, cautioned to the extent of threats the boy, Elmer Hoffman, not to disclose their inquiries about the liquor. A defendant, indicted jointly with others, cannot by electing to be separately tried, preclude the Commonwealth from showing the relevant history of the crime although it may include acts of his confederates. The answer to the defendant's sixth point properly limited the effect of the alleged conversation between defendant and Elmer Hoffman, as evidence tending to show the defendant's attitude towards the liquor on the Hoffman farm and tending to show a conspiracy, but that it was not evidence of an intent to kill Louis Hoffman, the deceased.

The evidence that the witness, Gearhart, was permitted to relate a conversation with Cantilla in the winter of 1928 was of no moment; so, if its admission was error, it was harmless. It might also be said that the testimony of the witness Stoltz, as to where he had worked, was of no moment and its admission did

defendant no harm. When a witness is accused of having made conflicting statements or of having failed to make an earlier disclosure of her knowledge of the crime, she may explain this by stating that she had been threatened if she did by those interested in the defense: Com. v. Del Vaccio, 299 Pa. 547. This explanation will not be excluded because the threat was made by a codefendant.

The trial judge, in passing upon the qualifications of a juror, should consider all of his ánswers and if therefrom it appears that he could try the case fairly upon the evidence, disregarding his present impressions, he is not disqualified. So considered, overruling the challenge for cause of the juror, Fred Jones, was not error. See Com. v. Eagan, supra; Com. v. Sushinskie, 242 Pa. 406. There was no irregularity, much less error, in the act of the sheriff in striking the name of D. W. Heeter from the list of talesmen called to complete the jury. The court directed the sheriff to summon thirty talesmen and by mistake he called thirty-one, hence, he struck off one. A defendant is entitled to an impartial jury, but not to any particular juror or jurors.

The defendants, Polumbo, Cantilla and Powell, were convicted prior to the trial of Crow and then had motions pending for new trials. These were public matters probably known to every man on the Crow jury. The fact of such convictions was mentioned by the district attorney in his address to the jury; but the trial judge immediately told the jury they should disregard it, that it had nothing to do with Crow's case, but declined to withdraw a juror. This was a matter for his discretion (see Com. v. Del Vaccio, supra), and in any event was not of sufficient gravity to call for our interference. Moreover, Crow's defense rested on different testimony from that of the other defendants.

The statement in the charge that, "Where the defense is an alibi the testimony, in order to establish a complete alibi, must cover the whole time in which the crime by

any possibility might have been committed, and it should be subjected by the jury to rigid scrutiny, but evidence tending to establish an alibi, though not clear, may of itself, or with the other facts in the case, raise a reasonable doubt in the minds of the jury as to the guilt of the defendant," was a correct statement of the law (see Com. v. Barrish, 297 Pa. 160; Rudy v. Com., 128 Pa. 500), and was followed by a careful summary of the evidence in support of the alibi.

Neither Parsi, Polumbo, Cantilla or Powell was offered as a witness for the defense, hence the trial judge was not required to instruct the jury that they could not be called as such. The offers of proof raised no such question, hence, he was not required to discuss it. See Com. v. Micuso, 273 Pa. 474. That question could have been tested by calling them, when they could have testified, at least, unless an objection had been interposed. The question of a new trial was one for the lower court's discretion, and, having refused it, the sentence followed.

Credibility of the evidence was for the jury; if believed, it contained all the elements of first degree murder. The trial judge conducted the case with entire fairness. There was no legal impropriety in his remark to the jury that, "If your verdict is what you conscientiously believe is right and proper on the testimony in the case you need not be ashamed to look any man in the eye afterwards, but if it is not the honest result of your conclusions from the evidence then you should be ashamed of yourselves." An appellate court will not disturb the judgment in a homicide case merely because the jury might have found a different verdict: Com. v. Scott, 284 Pa. 159. The record discloses no substantial reason for granting a new trial.

The assignments of error are all overruled, the judgment is affirmed and the record is ordered remitted for the purpose of execution.