## Commonwealth v. Stabinsky, Appellant.

232

Argued September 25, 1933. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Edward Darling,* for appellant.

*John H. Dando,* Assistant District Attorney, with him *Thomas M. Lewis,* District Attorney, and *Peter Kanjorski,* Assistant District Attorney, for appellee.

OPINION BY MR. JUSTICE LINN, November 27, 1933:

In the perpetration of a burglary during the night of November 12, 1932, appellant, Stabinsky and an accomplice, Tetrosky (appellant in No. 313, the next case), brutally assaulted Mary Malinowski, inflicting injury resulting in death. Both were arrested shortly thereafter, and, taken to the Malinowski residence, described the crime in revolting detail. Statements by them to the police and assistant district attorneys were put in evidence. The jury found appellant guilty of murder of the first degree with the death penalty.

He complains of error in overruling a challenge for cause made on the ground that a juror's answers disclosed prejudicial opinion of appellant's guilt. The trial judge thought there was no basis for the criticism suggested. We have considered the subject in the light of the familiar rule (see Commonwealth v. Roddy, 184 Pa. 274, 39 A. 211, and cases considering the subject, down to Commonwealth v. Crow, 303 Pa. 91, 100, 154 A. 283) and must dismiss the assignment as without merit.

Complaint is also made of a portion of the charge stating that appellant struck the victim with an iron bar. If this was a misstatement of fact that might be considered prejudicial, counsel should have called the attention of the court to it for correction before the jury retired. But it is not clear that it was a mistake; the murderers broke their black jack on the head of the woman and then descended to the cellar and "found an iron down there," and, returning to the woman's room (in the words of the statement to the officers, put in evidence) "we socked the girl with the iron." At this point in the narrative, Tetrosky interrupted with, "You did not hit her with the iron," and appellant added, "I did not hit her with the iron." The jury was, however, specifically instructed that it must be governed by its own recollection of the evidence and not by that of the judge. Under all the evidence on the subject, of

which we have quoted only part, the fact was for the jury; if a mistake was made, the error was harmless in the circumstances disclosed by the record.

Complaint is made of an instruction that, if appellant was found guilty of first-degree murder, he, "in the opinion of the court, deserves the maximum penalty under the law." But that was not all that was said on the subject; the jury was specifically instructed that the punishment was "a matter entirely for your discretion. You are not bound by any opinion the court may have expressed." An expression of opinion, so qualified, is not improper: Com. v. Nafus, 303 Pa. 418, 420, 154 A. 485.

There is no foundation for the assignment of error "in placing undue stress on the evidence of the Commonwealth and in minimizing the evidence for the defendant." The evidence included testimony of a number of members of the Malinowski household, the officers who arrested the murderers, the officers to whom they made their statements, and the stenographic report of the accounts of their crime. The only witness who testified for defendant was a physician. The court did not minimize the effect of this physician's testimony. He was called as an expert and testified concerning his examination of appellant, gave his sources of information, etc., and the opinion formed by him. He testified that appellant "began—he is beginning to show a split personality, and I felt he was beginning to show evidences of an incipient schizophrenia, with the psychopathic tendency, and therefore I combined the two words, a schizophrenic-psychopath." He also said that disease is "not an insanity." The commission of the crime was not denied and it was not claimed that appellant was insane when the crime was committed or when arraigned and tried. The jury was instructed that the doctor testified "that this defendant could distinguish between right and wrong, but the defendant was only partially responsible." Two points for charge, presented on behalf of appellant, were affirmed, as follows:

"3. If the jury believe the testimony of Dr. Winkelman, they may take this testimony into consideration in fixing the degree of punishment, if they find defendant guilty of murder in the first degree."

"4. If the jury believe the testimony of Dr. Winkelman, they may take this testimony into consideration along with all the other testimony in the case, in fixing the degree of punishment, if they find defendant guilty of murder in the first degree."

Appellant also complains that the learned court excluded other evidence of mitigating circumstances that should have been received for the purpose of enabling the jury to determine whether, if found guilty, appellant should be sentenced to death or to life imprisonment, as provided for by the Act of May 14, 1925, P. L. 759, 18 PS 2222. This complaint is presented in the sixth assignment of error: "We offer to prove by this witness [appellant's mother] facts in the history and behavior of the defendant, on the basis of which facts, together with other facts which will be testified to by other witnesses, and together with an examination of the defendant, and an observation of his conduct in court, and after hearing all of the evidence presented here in court today, Dr. Winkelman will state that in his opinion the defendant, at the time of the alleged occurrence for which the defendant is now on trial, and for some time prior thereto, was and now is a schizophrenic-psychopath, and therefore irresponsible for his actions." The offer was so defective in substance as to justify the court in sustaining the Commonwealth's objection. What were the facts which it was proposed to prove? Instead of offering merely to prove facts "on the basis of which together with other facts which will be testified to by other witnesses......," there should have been a brief statement of the facts proposed to be proved so that the court could determine whether they were relevant, for, unless relevant, they could not be received. And it is to be noted, so far as the offer referred to Dr. Winkel-

man's "observation of [appellant's] conduct in court," that the appellant had the benefit of it, because the doctor testified that his opinion was in part based on his observation of the defendant in court. The doctor also stated that he had considered the history of the appellant as received from his parents. It was not an offer of evidence, in part relevant and in part irrelevant, which, in a prosecution for homicide, might require the judge to separate the good from the bad (cf. Com. v. Colandro, 231 Pa. 343, 348, 80 A. 571) but an offer that gave no indication of relevance. The record appears to show that the judge thought that counsel proposed to submit lay evidence of insanity, although the defense of insanity was not made, and suggested that the lay witness be called after the doctor had testified. The doctor testified that appellant was suffering from the mental disease described but was not insane within the rule applied in criminal prosecutions in this State. Counsel for appellant said: "We do not rely upon the testimony of Dr. Winkelman to excuse the crime, but we do rely upon it—we do think it ought to be submitted to the jury for the purpose of measuring the punishment that might be imposed upon—they might in fact impose upon the defendant, in fairness and mercy. The court: Then the sole purpose of Dr. Winkelman's testimony is for mitigation of penalty? Mr. Walsh: Yes. The court: And for no other purpose. Mr. Walsh: No."

The Commonwealth then moved to strike out the evidence of the doctor on the ground that it should not be received but the court refused the motion and affirmed the points for charge quoted above, submitted on appellant's behalf.

In refusing a new trial, the learned trial judge said that the doctor's evidence was "presumably offered to show mental irresponsibility [by which we understand that he meant insanity]. When admitted, it failed to approximate the legal standard which prompted defendant's counsel to oppose its exclusion on the basis

of its competency in mitigation of punishment......
As it is our firm opinion that such an independent inquiry is not permissible under the Act of 1925, we did not allow the Commonwealth to offer rebuttal evidence on the defendant's mental condition, thereby joining issue other than the one framed by the indictment and the plea of the defendant. True, our courts have admitted evidence of prior convictions, but to permit, under the Act of 1925, an issue of mere mental weakness may result in opening a large domain wherein maudlin sympathy will reign and justice perish......"

The evidence fully supports the verdict in both its aspects. But we must take this opportunity of saying that we differ from the view of the learned trial judge that appellant was not entitled to have the doctor's evidence go to the jury, as it did, in possible mitigation of penalty. The Act of 1925[1] imposes on the jury a specific duty,—the duty of fixing the penalty by its verdict. As the penalty may be death or life imprisonment, a serious responsibility devolves on the jury; to perform its duty, the jury is entitled to be informed. Since the passage of the statute, this court has affirmed convictions with the death penalty in which not only prior convictions of other crimes were put in evidence,[2] but in which alleged confessions of other offenses were received.[3] This procedure is necessary, as was said in Com. v. Dague, 302 Pa. 13, 15, 152 A. 839, "to enable the jury to know what manner of man the defendant was,

---

[1] "Every person convicted of the crime of murder of the first degree shall be sentenced to suffer death in the manner provided by law, or to undergo imprisonment for life, at the discretion of the jury trying the case, which shall fix the penalty by its verdict."

[2] Com. v. Flood, 302 Pa. 190, 155 A. 152 (cross-examination of defendant). Com. v. Schroeder, 302 Pa. 1, 152 A. 835 (medical experts allowed to testify defendant was habitual criminal). Com. v. Williams, 307 Pa. 134, 160 A. 602.

[3] Com. v. Parker, 294 Pa. 144, 143 A. 904; Com. v. Mellor, 294 Pa. 339, 144 A. 534; Com. v. Weston, 297 Pa. 382, 147 A. 79; Com. v. Dague, 302 Pa. 13, 152 A. 839.

if they should find him guilty of murder of the first degree, when it came to the exercise of their discretion on the question of his punishment under the act......"

Now if such evidence may be received against a man, he must be given opportunity to deny it, for, in any view, the fact of identity may be involved. A rule would command little respect if it permitted the State to show what was bad about a man for the purpose of persuading the jury to inflict a more severe penalty, without at the same time permitting the defendant to show that he was suffering with a mental disease that might affect his conduct, though not in fact insane as the term is applied in the criminal law. In sentencing prisoners, wise judges invariably consider elements in mitigation and extenuation.[4] In Com. v. Williams, 307 Pa. 134, 155, 160 A. 602, we held that mitigating circumstances may be considered by the jury in fixing the penalty. "Diminished responsibility is a scientific fact, scientifically established and capable of being analyzed."[5] The subject of the mental condition of persons charged with crime was considered by the legislature at its last session and resulted in the statute approved May 2, 1933. The title is "An act providing for the deferring of sentences in certain cases pending the mental examination

---

[4] Com. v. Scott, 14 D. & C. 191; Com. v. Ritter, 13 D. & C. 285; cf. Mass. Laws 1926, chapter 320, section 4, directing the Massachusetts courts to get from the probation officer all available information concerning the prisoner before imposing sentence.

[5] Grasset, *The Semi Insane and the Semi Responsible* (Eng. Trans. by Jeliffe, 1907), page 349. See also, Weihofen, *Partial Insanity and Criminal Intent* (1930), 24 Ill. L. Rev. 505. He also quotes the Italian Penal Code of 1889: "Art. 46: No one is punishable who, at the time of doing the act, was in such a state of insanity of mind as to deprive him of the consciousness of his acts or of his freedom of action." "Art. 47: If the state of mind indicated in the preceding article was such as greatly to diminish the responsibility, without, however, excluding it, the punishment prescribed for the crime is to be reduced." Glueck, *Mental Disorder and the Criminal Law* (1925), pages 412n-418.

of defendants; authorizing trial judges to require psychiatrists employed by the Department of Welfare or County or State mental hospitals to examine certain such defendants without additional compensation, except expenses payable by counties, providing for the commitment of defendants to certain institutions where the reports show the same to be advisable; and providing for the payment by individuals, counties, or the Commonwealth of the cost of admission, care and discharge of such defendants."[6]

If the inquiry is properly controlled, as it should be, the evil suggested by the learned trial judge as incident to the application of the rule, will not result. The difficulties, in any event, are inherent in the undertaking. Until this court shall hold, or the legislature shall establish, that evidence specifically going to the penalty shall be received only after a special finding of guilt has been returned, the inquiry as to guilt may of course be prejudicially affected by evidence received for the purpose of enabling the jury to fix the penalty.[7] But we must not adopt a rule minimizing the difficulty by excluding relevant evidence favorable to a defendant while allowing evidence of the character indicated to be received against him.

Judgment affirmed and record remitted for purposes of execution.

---

[6] This act supplements the Mental Health Act of 1923, P. L. 998, section 308, as amended 1927, P. L. 431, section 311 (b). Cf. Com. v. Mosler, 4 Pa. 264; Keenan v. Com., 44 Pa. 55; Com. v. Wireback, 190 Pa. 138, 42 A. 542.

[7] See Wigmore, *Using Former Convictions to Discredit an Accused Who Takes the Stand* (1931), 4 Pa. Bar Assn. Q. 1; Note (1931) 35 Dick. L. Rev. 235; Note (1932) 80 U. of P. L. Rev. 565, 568-9; Note (1933) 7 Temp. L. Q. 330.