Commonwealth *v.* Gossard, Appellant.

Argued September 27, 1955. Before STERN, C. J., STEARNE, JONES, MUSMANNO and ARNOLD, JJ.

*John M. Bennett,* with him *William P. Kelly,* for appellant.

*Fred J. Fees,* for appellee.

OPINION BY MR. CHIEF JUSTICE HORACE STERN, November 14, 1955:

Defendant having pleaded guilty to the charge of murder the three judges of the court below held a hearing, adjudged his crime to be murder of the first degree, and fixed the penalty at death.

Defendant, 39 years of age, is a tall man weighing nearly 200 pounds. By his own admissions he is, and all his life has been, a sexual degenerate, enticing and preying upon many females including "dozens"—even "hundreds"—of children of tender age.

On the early evening of October 28, 1954, defendant accosted a little girl, Karen Mauk, aged 6 years, weighing from 40 to 50 pounds, on a street in the Borough of East Conamaugh, Cambria County. She had left her home nearby to engage in a Halloween jaunt; when she failed to return at ten o'clock and could not be located in the neighborhood an alarm was given and an organized search begun. About midnight her dead body was found in a cemetery two miles distant; she was lying on her back, undressed except for shoes and socks. It later appeared, as confessed by defendant, that, upon meeting Karen, he had subjected her to lewd practices which he resumed in a nearby garage and had then driven her to the cemetery where she was subsequently found; during the automobile ride he disrobed the child and continued to indulge with her in unnatural practices. Upon reaching the cemetery he spread her coat upon the ground, placed the little girl upon it and stretched his body over her. When she complained that he was pressing too hard upon her body he started to rise but claims that he then suffered a "blackout," and, when he regained consciousness, he found himself lying across her face. Feeling for her pulse, listening to her chest, and finding no sign of life, he left the scene and drove back to his home, leav-

ing the body in the position in which it was later found. Arrested a few days thereafter he made, an oral confession to the Chief of Police of the City of Johnstown who wrote down in longhand his answers to the questions propounded to him. The confession was then reduced to typewritten form and presented to defendant, who signed it after making a few corrections and deletions.

Medical testimony produced at the hearing was to the effect that the child had died of smothering, or suffocation, caused by the pressure of defendant's heavy body upon her chest. When found she was blue in the face, her tongue was protruding and a bloody fluid was oozing from her mouth, all of which indicated death by asphyxiation. There were some slight bruises upon her legs and other parts of her body. The principal question to be determined was whether the death had occurred in an attempt by defendant to commit rape. He denied that he had been guilty of anything other than acts of perversion, but in answer to one of the questions asked him in regard to Karen having cried he said: "I was trying to penetrate her and I guess it hurt." This he deleted from the written confession before he signed it, insisting that he had not made such a statement, but the Chief of Police and several others who either were present when the confession was made or were listening in an adjacent room at the end of an intercommunication system testified positively that he had made the remark attributed to him. Accepting their testimony as true, and on the basis of it and other testimony, the court found that the death of the child occurred during defendant's attempt to perpetrate rape, and accordingly found him guilty of murder of the first degree in accordance with §701 of The Penal Code of June 24, 1939, P. L. 872. In view of the court's finding of fact on this disputed

factual issue its fixing the crime as first degree murder followed inevitably.

Defendant claims that the imposition of the death sentence was unwarranted and that the penalty imposed upon him should have been life imprisonment because of the mitigating circumstances that his conduct resulted from emotional disturbance, personality defect, and diminished responsibility. Prior to the time of taking testimony on the plea of guilty the court had ordered psychiatric examinations of defendant, and these were made, first at Torrance State Hospital where he had been committed for observation, and later at the City-County Clinic in Johnstown. Elaborate reports obtained from those institutions revealed the fact that his abnormal sexual practices had begun when he was 9 or 10 years old, and from then on the major part of his life seems to have been devoted to the luring of little girls for such depraved purposes. But, as one of the reports stated: "he talks relevantly and coherently, is not hallucinated, does not express any delusions, and shows no obsessive-compulsive tendencies." There was no evidence whatever of subnormal mentality. He had served some time in prison, once on the charge of an attempted rape and twice for stealing letters from private mail boxes. He showed no remorse for his crime, exhibiting little feeling about the terrible effect of his deed upon the little girl's family and upon his own. The reports from both institutions indicated that, while his sexual deviations were more or less fixed and were symptoms of a personality disorder, he was not psychotic.

The Penal Code, §701, provides that "In cases of pleas of guilty, the court, where it determines the crime to be murder of the first degree, shall, at its discretion, impose sentence of death or imprisonment for life." While the court's determination of the penalty

is subject to appellate review the question is not whether the appellate court would have imposed the same penalty as did the court below but whether that court manifestly abused the discretion confided to it by the statute: *Commonwealth v. Howell,* 338 Pa. 577, 580, 13 A. 2d 521, 522; *Commonwealth v. Taranow,* 359 Pa. 342, 344, 59 A. 2d 53, 54; *Commonwealth v. Givens,* 363 Pa. 141, 147, 69 A. 2d 142, 144; *Commonwealth v. Elliott,* 371 Pa. 70, 76, 77, 89 A. 2d 782, 785; *Commonwealth v. Phillips,* 372 Pa. 223, 228, 93 A. 2d 455, 457. There is no fixed or arbitrary standard provided by law regulating the exercise of that discretion, neither does it lie within the province of this court to attempt to formulate such a standard: *Commonwealth v. Hawk,* 328 Pa. 417, 419, 196 A. 5, 6; *Commonwealth v. Samuel Jones,* 355 Pa. 522, 534, 50 A. 2d 317, 323; *Commonwealth v. Taranow,* 359 Pa. 342, 346, 59 A. 2d 53, 55; *Commonwealth v. Givens,* 363 Pa. 141, 147, 69 A. 2d 142, 144; *Commonwealth v. Elliott,* 371 Pa. 70, 77, 89 A. 2d 782, 785, 786. The court below carefully analyzed the extremely voluminous testimony, considered the type and character of the offense, the criminal record of the defendant, the apparent impossibility of rehabilitation, the fact that his history reflected a continuing course of conduct inimical to the best interests of society, and the deterrent effect of the penalty upon others inclined to commit similar crimes. Weighing all these factors the court concluded that the graver penalty should be imposed, and now, reviewing its action, we cannot say that in arriving at that conclusion it was guilty of an abuse of the discretion vested in it by The Penal Code.

The judgment and sentence are affirmed.