## Commonwealth *v.* Harris, Appellant.

Argued November 29, 1967. Before BELL, C. J., MUSMANNO, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*John W. Packel*, Assistant Defender, with him *Louis Lipschitz* and *Melvin Dildine*, Assistant Defenders, and *Herman I. Pollock*, Defender, for appellant.

*Welsh S. White,* Assistant District Attorney, with him *Alan J. Davis,* Assistant District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE EAGEN, July 1, 1968:

On April 21, 1953, the appellant, Curtis Harris, plead guilty generally to an indictment charging him with the crime of murder. After a hearing before a three-judge court, he was found guilty of murder in the first degree and was sentenced to life imprisonment. At the time of the plea and throughout the proceedings, Harris was represented by James W. Tracey, Esq., and Charles A. Lord, Esq., court-appointed counsel. No appeal was entered from the judgment and no request was ever made of the court to withdraw the plea.

On April 28, 1966, Harris filed a petition for post-conviction relief alleging that his guilty plea was not intelligently entered because at the time he was mentally defective and lacked sufficient mental capacity competently and intelligently to plead to the charge. After a hearing, the court below dismissed the petition and this appeal followed. We reverse.

Unless a person is mentally competent, he should not be required to either stand trial or plead to a criminal indictment. *Commonwealth v. Scovern,* 292 Pa. 26, 140 A. 611 (1927). And if a person who is mentally incompetent pleads guilty to a criminal indictment, the plea is a nullity. *Commonwealth v. Moon,* 383 Pa. 18, 117 A. 2d 96 (1955); *Commonwealth ex rel. Hilberry v. Maroney,* 424 Pa. 493, 227 A. 2d 159 (1967). And, as we stated in *Hilberry,* supra, at 495, 227 A. 2d at 160: "The test to be applied in determining the legal sufficiency of his mental capacity to

stand trial, or enter a plea at the time involved, is not the M'Naghten 'right or wrong' test, but rather his ability to comprehend his position as one accused of murder and to cooperate with his counsel in making a rational defense. See Commonwealth v. Moon, supra, and Commonwealth ex rel. Hilberry v. Maroney, supra, [417 Pa. 534, 207 A. 2d 794 (1965)] at 544. Or stated another way, did he have sufficient ability at the pertinent time to consult with his lawyers with a reasonable degree of rational understanding, and have a rational as well as factual understanding of the proceedings against him. See Dusky v. United States, 362 U.S. 402 (1960). Otherwise, the proceedings would lack due process: Bishop v. United States, 350 U.S. 961 (1956)."

An examination of the instant record convinces us that at the crucial time Harris lacked sufficient mental capacity to either stand trial or enter a plea to the indictment. His guilty plea was therefore of no effect and the judgment of sentence entered thereon is invalid.

These facts established by the record speak for themselves and demonstrate the basis for our conclusion.

The crime arose out of a robbery of a drug store in Philadelphia by Harris, Harry Johnson and Willie Odom; eighteen, sixteen and fourteen years of age respectively. Harris was armed with a revolver given him by another youth some time before. Odom remained outside as a lookout. As Harris and Johnson entered the store and announced "this is a hold-up, let's have the money," the proprietor became frightened and started to run away. Johnson then yelled to Harris "shoot him." Harris immediately shot one bullet from the revolver into the proprietor's back, which caused his death.

Harris was born on October 22, 1933, and entered school at the age of six years. He was shuttled from one school to another and finally "dropped" permanently in 1950, when he was sixteen years old and enrolled in the sixth grade. This course of action was pursued by the school authorities following such a recommendation by the school's supervisor of mental examinations and the receipt of the results of psychological tests indicating Harris was a "mental defective" with a mental age of eight years and an intelligence quotient of forty-nine.

Prior to trial, Harris was examined by a court-appointed psychiatrist. He found that Harris' "judgment was poor and there was no guarantee that he would not be subject to impulses over which he would have no control." He also reported that Harris was a "moron" with sub-normal intelligence and lacking ability "to think intellectually in any degree."

The record of the plea proceedings sheds further light on his situation.

The trial court's questioning of Harris personally was extremely limited. It consisted of the following: "THE COURT: Harris, you understand what that means, do you? You understand what that guilty plea means? It means you acknowledge that you killed a man—or was it a woman? MR. OLIENSIS [Assistant District Attorney]: A man, sir. THE COURT: Do you know what that means? That you acknowledge that you killed a man? [No response] MR. OLIENSIS: I suggest that your Honor use simpler words. THE COURT: You use them, Mr. Tracey."

No further questioning of Harris followed and immediately after this colloquy, Mr. Tracey, Harris' counsel, addressed the court and explained that he and Mr. Lord had discussed the facts of the crime and the significance of a guilty plea with Harris "with his

uncle helping us" and *"I am quite sure* he knew what he was doing." [Emphasis added.] The plea was then accepted.

In passing sentence the trial court stated that because of Harris' "low mental qualities" and the fact he might in the future, if released, become "a tool of smarter persons," he should be confined for life without release by the Board of Pardons.

We repeat, the record facts speak for themselves and demonstrate persuasively, that at the time of plea Harris lacked the mental capacity to comprehend his position or to assist his attorneys in preparing and offering a rational defense. Under the circumstances, his plea should not have been accepted.

Order reversed and record remanded with directions to enter an order consonant with this opinion.

Mr. Justice JONES took no part in the consideration or decision of this case.

---

DISSENTING OPINION BY MR. CHIEF JUSTICE BELL:

I agree with the law which is set forth in the majority Opinion, but strongly disagree with a number of the deductions and conclusions made therefrom.

Over and over again, this Court has said that it is not a defense even to first degree murder that the murderer was a mental defective or a moron, or had an irresistible impulse or psychiatric instability, et cetera.

In *Commonwealth v. Ahearn,* 421 Pa. 311, 218 A. 2d 561, we said (page 319): "In Commonwealth v. Melton, 406 Pa. 343, 178 A. 2d 728, the Court aptly said (pages 349-350): " 'There is not the remotest merit to defendant's contention that because of his deficient mentality, the Court did not have the power to convict him of murder in the first degree.

" 'In Commonwealth v. Smith, 405 Pa. 456, we sustained a verdict of guilty of murder in the first degree

with penalty of death, even though defendant was a sexual psychopath. We there said (pages 459-460): "This Court has sustained a verdict of first degree murder with penalty of death where defendant allegedly had *an irresistible impulse,*\* was a moron or a mental defective or a sexual pervert *or a psychopathic personality*\* or had been previously confined in the hospital for the criminal insane for 14 years, or was a schizophrenic psychopath or was an unstable, mentally defective moron, or was feeble-minded: Commonwealth v. Leamer, 386 Pa. 485, 126 A. 2d 409; Commonwealth v. Cole, 384 Pa. 40, 119 A. 2d 253; Commonwealth v. Gossard, 383 Pa. 239, 117 A. 2d 902; Commonwealth v. Elliott, 371 Pa. 70, 89 A. 2d 782; Commonwealth v. Carluccetti, 369 Pa. 190, 85 A. 2d 391; Commonwealth v. Givens, 363 Pa. 141, 69 A. 2d 142; Commonwealth v. Neill, 362 Pa. 507, 67 A. 2d 376; Commonwealth v. Howell, 338 Pa. 577, 13 A. 2d 521; Commonwealth v. Hawk, 328 Pa. 417, 196 A. 5; Commonwealth v. Stabinsky, 313 Pa. 231, 169 A. 439." ' "

The majority Opinion ignores and impliedly overrules all of our many prior cases on this point. It completely ignores the protection of society against criminals, which is so desperately needed in these days when brutal crimes are increasing over six times more rapidly than is our population, and in practical effect turns the determination of criminality over to psychiatrists.

This defendant, who was without the slightest doubt guilty of first degree murder, was convicted in 1953 while represented by two Court-appointed counsel. One of those attorneys was one of the ablest criminal lawyers in the history of Philadelphia. That attorney, *according to the record,* stated to the trial Court that he and Harris's other counsel had discussed with de-

---

\* Italics in original Opinion.

fendant the facts of the crime and the significance and effect of a guilty plea to the murder indictment, and testified, *"I am quite sure he knew what he was doing."* How can this Court now ignore or black out this testimony, or contend that this defendant was so mentally incompetent as to be unable to stand trial or to adequately confer with his counsel?

It is impossible for me to understand how this Court, fifteen years after this brutal murder, could, by a stretch that would outstretch Procrustes, release (in practical effect) this murderer and further jeopardize society.* The majority's decision is completely devoid of reality and justice, and extends and stretches even the recent decisions of the Supreme Court of the United States, to which (I may add) I am strongly opposed.

Mr. Justice MUSMANNO joins in this dissenting Opinion.

--------

* I note further that this murder was so awful that the trial Judge aptly said that because of Harris's "low mental qualities" and the fact that he might in the future, if released, become "a tool of smarter persons," he should be confined for life *without release* by the Board of Pardons.