## Commonwealth *v.* Endrukat, Appellant.

*Criminal law—Murder—Insanity—Verdict—Twice in jeopardy.*

1. Where a prisoner has been put on trial for murder, and his insanity at the time of the trial has been set up in defense, and the jury instructed by the trial judge to pass upon both the question of his guilt and the question of his sanity at the time of the trial, and has returned as one verdict (against the objection of the prisoner), that the prisoner is guilty of murder of the first degree, and insane at the time of the trial, and the jury has been discharged, and thereafter the court of its own motion sets aside the verdict and grants a new trial, the prisoner may again be put on trial upon the same indictment.

2. In such a case it was the duty of the jury at the first trial to return a verdict that the prisoner was insane at the time of the trial without more. The additional finding that he was guilty of murder was without authority, was a mere nullity, and should not have been accepted by the court. There was no trial at all on the charge against him, and he was no more in jeopardy after the jury had been sworn than he was before he had been called upon to plead.

3. Where a court through inadvertence or otherwise accepts a verdict which a jury is powerless to render, it may thereafter, of its own motion, set such a verdict aside.

Argued March 6, 1911. Appeal, No. 39, Jan. T., 1911, by defendant, from judgment of O. & T. Phila. Co., Oct. Sessions, 1907, No. 273, on verdict of guilty of murder of the first degree in case of Commonwealth v. Frank En-

drukat. Before Fell, C. J., Brown, Mestrezat, Potter and Stewart, JJ. Affirmed.

Indictment for murder. Before Ralston, J.

The facts are stated in the opinion of the Supreme Court.

*Errors assigned* among others were in sustaining the demurrer of the commonwealth to the prisoner's special plea of former jeopardy, and in overruling the defendant's motion in arrest of judgment.

*Franz Ehrlich, Jr.,* with him *Edward W. Wells,* for appellant.—The prisoner was twice in jeopardy: McFadden v. Com., 23 Pa. 12; Com. v. Cook, 6 S. & R. 577; Com. v. Clue, 3 Rawle, 498; Peiffer v. Com., 15 Pa. 468; Alexander v. Com., 105 Pa. 1; Hilands v. Com., 111 Pa. 1; Com. v. Fitzpatrick, 121 Pa. 109; O'Brian v. Com., 72 Ky. 333; Ex parte Spier, 12 N. C. 491; Ex parte Tice, 32 Oregon, 179 (49 Pac. Repr. 1038); Helm v. State, 66 Miss. 537 (6 So. Repr. 322).

*John M. Patterson,* assistant district attorney, with him *Samuel P. Rotan,* district attorney, for appellee.—The prisoner was not twice in jeopardy: McFadden v. Com., 23 Pa. 12; Com. v. Cook, 6 S. & R. 577; Com. v. Clue, 3 Rawle 497; Hilands v. Com., 111 Pa. 1; Com. v. Fitzpatrick, 121 Pa. 109.

Opinion by Mr. Justice Brown, May 1, 1911:

Though the question raised on this appeal is a new one, the answer to it is old. In the paper-book of counsel for appellant the following is a fair statement of it: "Where a prisoner has been put on trial for murder in the first degree and his insanity at the time of the trial has been set up in defense and the jury instructed by the trial judge to pass on both the questions of his guilt of murder and of his sanity at the time of trial, and has returned as one verdict

(against the objection of the prisoner), that the prisoner is guilty of murder of the first degree and insane at the time of trial, and the jury has been discharged; and thereafter the court of its own motion sets aside the verdict and grants a new trial against the prisoner's objection—can the prisoner again be put on trial upon the same indictment, or does his former jeopardy entitle him to a discharge?"

On December 12, 1907, the prisoner was arraigned and ordered to plead to an indictment charging him with murder. When so arraigned a petition was presented to the court asking for a special jury to be impaneled to inquire into his sanity in accordance with the provisions of the sixty-seventh section of the Act of March 31, 1860, P. L. 427. After investigation by the court this was denied, and thereupon, a special plea having been filed, alleging that the defendant was then insane, the court was asked "to give oyer to said plea in the manner provided by law." This plea having been overruled and the defendant having stood mute, the court directed a plea of "not guilty" to be entered for him on the indictment, and the jury were instructed to pass not only upon his guilt, but upon his mental condition at the time of the trial. On the next day— December 13,—a verdict was returned finding the prisoner guilty of murder of the first degree "and now a lunatic and of unsound mind." The prisoner was then committed to an asylum for the insane, but, upon the certificate of the superintendent of the institution that he no longer needed remedial treatment and was sane, was returned to the county prison on January 5, 1909. On December 2, 1910, the commonwealth moved for judgment upon the verdict, but the court of its own motion set it aside and awarded a new trial for the reason that in view of the finding of the jury that the prisoner was insane at the time he was tried, he could not legally have been placed on trial; and it was ordered that if he then in proper manner and with sufficient prima facie evidence should demand an inquiry as to his sanity, such preliminary inquiry would

be disposed of before the trial of the main issue. Shortly thereafter, on December 21, 1910, the prisoner was again arraigned and ordered to plead. His counsel thereupon, in bar of further proceedings against him, filed a plea alleging his former jeopardy on the indictment, because (1) on December 13, 1907, the jury had been discharged without and against his consent, after returning a verdict of guilty of murder of the first degree, and that he was then a lunatic and of unsound mind, a motion having been made to the court to accept only the finding that he was a lunatic and to return the indictment to the jury; and (2) because on November 2, 1910, the court of its own motion had set the said verdict aside. The commonwealth's demurrer to this plea having been sustained, the prisoner was again directed to plead, and, having stood mute, the court ordered a plea of "not guilty" to be entered for him. His counsel then offered to show by testimony that he was insane, whereupon the court stated that it would hear the testimony, and, after hearing it, would decide whether the question of his sanity should be referred to a jury or not. To this counsel for the prisoner objected, insisting that a jury should be impaneled to try the question of his sanity at that time, without any preliminary investigation by the court. The court having declined this, counsel for the prisoner offered no evidence upon the subject, and the trial then proceeded, resulting in a verdict of murder of the first degree. From the judgment upon it we have this appeal.

In submitting to the first jury both questions, the guilt of the prisoner and his sanity at the time of his arraignment, the court followed Webber v. Com., 119 Pa. 223, in which the question raised was whether a defendant in a criminal case, who alleges his insanity at the time of arraignment, is entitled, as a matter of legal right, to have a separate, independent and preliminary trial of that question by a jury specially impaneled for the purpose, and it was decided that, under the rule of the common law in force with us, as changed by the act of Geo. IV, c. 28, sec.

2, when the question of sanity at the time of the trial is raised, it may be tried either by a special jury impaneled for that purpose, or by the jury who are to try the indictment.

When the jurors to whom the two questions were submitted found that the prisoner was insane at the time of his arraignment and during his trial, they could proceed no further, and they should have returned to the court room to have that finding alone recorded. It meant, and its legal effect was, that the prisoner could not be tried on the charge of murder, or on any other that then might have been pending against him. The verdict of guilty of murder of the first degree ought not to have been accepted by the court, but should have been treated as a nullity, for in view of the finding of the jury of the prissoner's insanity at the time he was put upon his trial, their attempt to try him on the indictment was abortive. It was no trial at all on the charge against him, and he was no more in jeopardy after the jury had been sworn than he was before he had been called upon to plead. The error into which counsel for the prisoner have fallen is in assuming that he was on trial on the indictment charging him with murder. As already stated, the answer to their contention is old, but it is brief, too. A man who is insane at the time he is arraigned and called upon to plead cannot be tried, for it matters not that he may have been sane at the time of the commission of the act charged against him, or that the evidence of his guilt may be strong, the law in its humanity says that with the departure of his reason there may have departed the means by which he might have been able to establish his innocence. A prisoner insane at the time of his arraignment can no more be put upon trial than a child incapax doli. "It is said by Lord Hale (1 Hale, 34, 35), that if the prisoner, after his plea, and before trial, becomes insane, he shall not be tried; and if after his trial, he becomes insane, he shall not receive judgment; and if after judgment, he becomes insane, his execution shall be spared; because, if he was of

sound mind, he might allege something in stay of judgment or execution. He has omitted the case of insanity happening during the trial; but, upon the principle of the other cases, no doubt, in such case, the jury should be discharged from giving a verdict:" Tilghman, C. J., in Com. v. Cook and others, 6 S. & R., 577.

It is the duty of a court to refuse to accept a verdict which a jury is powerless to render, and if through inadvertence or otherwise, such a verdict is accepted, the court may of its own motion set it aside, for courts have the inherent power to correct errors in cases tried before them, and in the exercise of such power may grant new trials of their own motion. Vide cases cited in 14 A. & E. Ency. Pl. & Pr., 932. This power was properly exercised in the present case. Even if it had been competent for the jury to pass upon the guilt or innocence of the prisoner, when their verdict of conviction was set aside, a plea of former jeopardy would not have availed him on a second trial on the same indictment: Com. v. Fitzpatrick, 121 Pa. 109.

The assignments of error are overruled, the judgment is affirmed and the record remitted for the purpose of execution.