THOMAS BELL

*v.*

STATE OF TENNESSEE.

423 S.W.2d 482.

(*Nashville,* December Term, 1967.)

Opinion filed January 12, 1968.

W. R. Baker and Neil Robertson, Ashland City, for plaintiff in error.

George F. McCanless, Attorney General, and Thomas E. Fox, Deputy Attorney General, for the State.

W. B. Lockert, Jr., District Attorney General, Ashland City, prosecuted the case in the trial court.

Mr. Chief Justice Burnett delivered the opinion of the Court.

Bell was convicted of murder in the second degree and sentenced to serve not more than seventeen (17) years in the State penitentiary.

The only insistence made on this appeal is that plaintiff in error was twice put in jeopardy for the same offense. Under the factual situation presented in this case neither the counsel for plaintiff in error nor have we, after an independent research, been able to find another case on the subject.

In September, 1959, the plaintiff in error was charged with the murder of one Martha Dotson. A hearing was had on February 22, 1960, at which time the plaintiff in error plead through his counsel the following plea in bar, to-wit, "that on September 20, 1959, and prior to said date, and subsequent to said date, and at all times covered by the indictment herein, the Defendant, Thomas Bell, was legally insane."

The case thus went to trial only on certain letters which the doctors of Central State Hospital had written and stipulations from both the State and the plaintiff in error that such statements would be the evidence if the doctors were called as witnesses. The jury then rendered a verdict and the judgment of the court is preserved and shows as follows:

"The Attorney General read the indictment to the jury, thereupon the defendant entered a plea in bar alleging insanity. * * * There was then introduced as testimony the statement of a number of physicians of Central State Hospital and it was stipulated by both the State and the Defendant that the statement read in evidence would be testimony of the doctors if called as witnesses. Both sides rested, both sides discussed

the case with the jury. The court instructed the jury in the premise, thereupon the jury retired to consider their verdict. Upon their return into court they announced that they found the defendant was insane."

It is thus on the plea above quoted and this judgment of the court that present counsel for the plaintiff in error has filed a petition for habeas corpus and challenges his right to be tried on the merits of the case wherein he was convicted of murder in the second degree, as hereinbefore set forth.

There was much discussion of this plea by the court, the District Attorney General, and counsel as to admitting the plea as filed and as to what the judgment of the court meant. The court in referring to his notes on his trial docket and by recollection was of the opinion that the question being tried was that of present insanity and was not as to whether or not the man was insane at the time he committed the offense; the recollection of the District Attorney General as well as the court was that this was what was being tried; counsel though take the position as to the plea coming on on this hearing for habeas corpus and as to the plea herein filed as to the merits of this case that the court proceedings showed that the issue of whether or not defendant was insane at the time of the offense was also presented to the jury, and that the judgment of the court on the plea as filed must stand as it is and that under it the man was entitled to be discharged as having been formerly placed in jeopardy.

Factually it is shown that plaintiff in error at the time this homicide was committed had been courting one, Martha Dotson; that on the date in question he went to her home with his brother who was engaged to her sister

for the purpose of seeing Martha. At the time he went there on this occasion he had been drinking and for some reason undisclosed in the record she refused to see him and went to another part of the house. The plaintiff in error sent for her twice but she refused to come. Her parents and other members of the household had gone to church. After the deceased refused to see the plaintiff in error he left and went away for some thirty or thirty-five minutes and borrowed a .410 gauge gun and then came back to her home and shot her through the window with this gun killing her.

No one saw him fire into the room but it was shown that he returned home and borrowed this gun from his nephew, which was used to kill the deceased. He hid out in the woods for two or three days but finally he went to his brother's home and his brother required him to surrender to the Sheriff of the county, having previously promised the Sheriff he would do so. At that time he admitted to the investigating officers that he had borrowed the gun from his nephew, and fired it into the house through a window.

■ The warning given the plaintiff in error before he made this statement about firing this gun does not comply with the requirements of *Miranda v. State of Arizona*, 385 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, but these statements were made long prior to *Miranda* and under *Johnson v. State of New Jersey*, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882, that the rule announced in *Miranda* was prospective only the rule does not apply here. This being true, we must look to this record to see whether or not the proof shows that there was an intelligent waiver of these rights when the interrogation was continued without defense counsel being present. It seems to us un-

questionably, and there is no controversy about it by the plaintiff in error, that the State proved that the plaintiff in error was advised of his constitutional rights and the statements made to these officers were made voluntarily and there were no questions asked in order to obtain a confession. The fact is the District Attorney General says that when the man was arrested he told the plaintiff in error the charge made against him and informed him that he did not have to say anything unless he wanted to. His response at that time was that he wanted to tell what had happened. There is no question about what he said being admitted.

The contention of the plaintiff in error is based upon Section 10 of the Declaration of Rights found in Article 1 of our Constitution, that "no person shall, for the same offense, be twice put in jeopardy of life or limb." This provision in our Constitution, which also appears in the Fifth Amendment to the Federal Constitution, is from the common law.

In effect this provision as interpreted by the courts has been to protect the citizen against oppression and prosecution even though the persons might be guilty. In effect it means when one is put on trial in a court of competent jurisdiction, on a valid indictment and a plea thereto, has a jury sworn upon an issue and the jury is charged with the fate of the accused, that is, when the jury is sworn to try the issue upon the indictment and the plea thereto, before the reading of the indictment or the introduction of testimony, he is thus put in jeopardy. *Ward v. State,* 20 Tenn. 253; *Tomasson v. State,* 112 Tenn. 596, 79 S.W. 802, and many others.

This provision in the interpretation of former jeopardy, or double jeopardy has been tested over the years

in a number of ways and even though the man has been put in the position of being indicted and placed on trial there are many instances where this will not be interpreted as placing the man in jeopardy so that he may not be tried again. In 1 Wharton's Criminal Law & Procedure, Anderson, at page 318, sec 141, an excellent statement is made of when jeopardy will not attach. The State argues that here in view of the fact that the only testimony introduced was the mental condition of the man, and the man being insane at the time, as found by the jury, he was not able to go to trial and thus that jeopardy did not attach.

We applied some of these exceptions in *Etter v. State,* 185 Tenn. 218, 205 S.W.2d 1, wherein we quoted the same provision from another edition of Wharton's Criminal Law. In this same Section of Wharton's it stated, that "the court may discharge a juror without working an acquittal of a defendant in any case when the ends of justice, under the circumstances, would otherwise be defeated." There are cases under this provision cited from most States in the Union including that of *Green v. State,* 147 Tenn. 299, 247 S.W. 84, 28 A.L.R. 842. The holding in the *Green* case was followed by this Court in *Helton v. State.* 195 Tenn. 36, 255 S.W.2d 694. The Supreme Court of the United States denied a petition for certiorari in the *Helton* case. In the *Helton* case we quoted at length from the *Green* case, supra, to the effect that:

"The general modern rule is that the court may discharge a juror without working an acquittal of the defendant in any case, where the ends of justice, under the circumstances, would otherwise be defeated."

And from *Etter v. State,* supra, it is said:

"In our effort to see that the rights of persons accused of crime are protected, we should not overlook the fact that the people also have interests that should be safeguarded. Both the accused and the people have a right to have the case of the accused tried by an impartial jury."

██ We use these references to show the exceptions where normally double jeopardy would attach and to show its application and use the same reasoning here where unquestionably the only thing before the court when this man was tried was his present insanity even though the plea said that he was crazy at the time, had been crazy all the time, etc., because it is obvious that the only proof offered was that of the hospital attendants, the doctors who said that the man was crazy when they examined him and that was after the crime had been committed; then when this case came on to be tried here and which is now before us some six years later the same doctors wrote a letter to the court setting forth that the man was now sane, capable of advising his attorneys, and of being tried. It is perfectly evident that the first trial was not on the man's insanity at the time he committed the act but was on the issue of his insanity at the time of his indictment and at the time of trial. Thus it is, as we see it, the man has not been hurt or harmed in any way, and that in all fairness we should hold that really what actually happened was not that the man was tried on any possible theory that he was insane at the time he committed this act and thus allow him to plead this as having been put in former jeopardy and that he was not subject to be tried again, but only that he was insane at the time the case came on to be tried.

■ Counsel for the plaintiff in error have been appointed by the Court and have done an excellent job for him herein for which we thank them. It was their duty to defend this man in every way possible, and we admire them for their diligence and thank them for doing so, but our investigation of the authorities clearly shows that every intendment is away from holding that the man had once been put in jeopardy for this crime. The essential element of a valid plea of double jeopardy is that the record should disclose that the defendant was lawfully convicted or acquitted of the offense for which he was indicted and called upon to answer. Under such a question it may be alleged that the defendant was insane at the time of the trial and in which case the purpose of the inquiry would be to determine whether or not he has sufficient mental capacity to understand his position and assist rationally in his defense. It may likewise be alleged that the defendant is not responsible for the crime charged because he was insane at the time the crime was committed. In that case the inquiry is directed to a determination of whether or not the defendant was responsible for his action at the time the crime was committed with the specific claim of legal insanity in effect in this State.

■ The courts in every case so far as we can find have held that under such a situation "One found by the jury to be insane at the time of trial cannot plead former jeopardy when arraigned a second time on the same charge, although the jury at the same time returned a verdict of guilty which was set aside by the court." Vol. 1, Wharton's Criminal Law, supra, page 334, sec. 142. As authority for this statement the author cites *Flynn v. United States* (C.A. 9th) 217 F.2d 29, and certiorari

was denied by the Supreme Court of the United States in 348 U.S. 930, 75 S.Ct. 344, 99 L.Ed. 729, and a rehearing was denied in 9 Cir., 222 F.2d 541. We have this reported case before us, and it is shown by it that the statement of the text writer, above quoted, is correct.

The author of Wharton likewise cites the case of *Commonwealth v. Endrukat*, 231 Pa. 529, 80 A. 1049, 35 L.R.A.,N.S., 470. We have read this case, and it holds that one who is found by a jury to be insane at the time of trial cannot plead former jeopardy when arraigned the second time on the same charge although the court accepted a verdict of guilty which the jury returned together with its finding of insanity when a former verdict was set aside and a new trial was granted. The verdict in this case was set aside by the court some three years after it was entered because it was seen that it was not the purpose to plead insanity and there was nothing to show that he was insane at the time when he committed the offense but the purpose was merely, as in the present case, to show that he was presently insane at the time of the trial.

Likewise in *Chase v. State*, 41 Tex.Cr.R. 560, 55 S.W. 833, the jury was empaneled to try the defendant as to his mental capacity to commit a crime to be tried "there afore." The jury found that the defendant was of unsound mind whereupon he was released on bail. It was there held that such proceedings were not a bar to a subsequent trial for the offense, and on which trial he had the benefit of a defense of insanity under a plea of not guilty. The same holds true in this State. This man could have had the benefit of a plea of not guilty on this second trial in addition to his plea of the bar of former jeopardy if he had desired to interpose it. No such plea was

interposed. It seems to us that under these authorities and for the reasons here set forth the plea of former jeopardy herein must fail.

The reasoning in *Flynn v. United States,* supra, runs like this: If this man was insane at the time he came up for trial the first time, as shown in the evidence, he was not able to understand the proceedings against him at that time and the nature of the crime with which he had been charged. In other words, if he was crazy at that time he is not present in court even though his body might have been physically there, and this being true, clearly, no trial or judgment could be held against him under such circumstances and thus it is that the proceeding is absolutely void, and we so hold it. There is nothing in the rules of procedure or in the statute, so far as we know in this State, that could give such a judgment vitality.

This being true, it is necessary that the judgment of the trial court be affirmed, which it is.