**Earl FEAGINS and Keith Jonas,
Appellants,**

v.

**STATE of Tennessee, Appellee.**

Court of Criminal Appeals of Tennessee,
at Knoxville.

Dec. 28, 1979.

Permission to Appeal Denied by Supreme
Court March 10, 1980.

Thomas D. Frost, Kingsport, for Feagins.

William S. Todd, Kingsport, for Jonas.

William M. Leech, Jr., Atty. Gen., William P. Sizer, II, Asst. Atty. Gen., Nashville, R. Jerry Beck, H. Greeley Wells, Asst. Dist. Attys. Gen., Blountville, for appellee.

## OPINION

TATUM, Judge.

The defendants, Earl Feagins and Keith Jonas, appeal from convictions of conceal-

ing stolen property valued at less than $100 with punishment of not less than two years nor more than five years in the State penitentiary for each defendant. They each attack the sufficiency of the evidence and the validity of a search warrant; the defendant, Jonas, also complains that the trial judge erred in refusing to permit his attorney to use exhibits during argument to the jury. After considering the issues, we affirm the judgments below.

On August 9, 1978, officers of the Sullivan County Sheriff's Department, armed with a search warrant, made a search of an old vacant house in the rural area of Sullivan County. There is evidence that Feagins owned an interest in the property. The officers found gold-plated tableware, a micro-wave oven, and a shotgun, all of which had been stolen in three separate burglaries.

Shortly before the officers arrived at the house with the search warrant, another officer was surveilling the house from the outside. He observed a red Pinto automobile, occupied by the two defendants and Tony Crawford, pass by the house. When the officers arrived to make the search, all of them parked their automobiles out of sight except for persons driving into the driveway. While the search was in progress, the red Pinto, occupied by the defendants and Crawford, pulled into the driveway; the Pinto then backed out and left hurriedly. One of the officers pursued the red Pinto to Crawford's mother's home, which was about two miles away.

Two teenaged brothers-in-law of the defendant, Jonas, testified that the defendants had taken them to the house and had shown them the stolen property, telling them, "Look what we got," or words to that effect. One of the teenagers testified that while the defendants entered a house from which the tableware was stolen, he had waited for them in an automobile outside.

The defendants did not testify, but introduced evidence seeking to discredit the testimony of the State's two teenaged witnesses.

Rule 13(e), Tennessee Rules of Appellate Procedure, permits us to set aside a judgment of conviction only when we find insufficient evidence to support a finding by the trier of fact of guilt beyond a reasonable doubt. Also see *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). We have reviewed the record and find abundant evidence upon which a rational jury could be convinced beyond a reasonable doubt of the defendant's guilt. The several issues concerning the weight and sufficiency of the evidence are without merit.

We now turn to the issues attacking the validity of the search warrant and the trial judge's denial of the defendants' motion to suppress evidence procured by the search. The motion to suppress was first made after the jury was selected and sworn; no cause was shown for the failure to make a pre-trial motion to suppress. Rule 12, Tennessee Rules of Criminal Procedure, was not considered by the court or counsel. We quote the pertinent portions of the rule:

(b) Pretrial Motions. Any defense, objection, or request which is capable of determination without the trial of the general issue may be raised before trial by motion. Motions may be written or oral at the discretion of the judge. *The following must be raised prior to trial*:

(3) Motions to suppress evidence;

(e) Ruling on Motion. *A motion made before trial shall be determined before trial unless the court, for good cause, orders that it be deferred for determination at the trial of the general issue or until after verdict, but no such determination shall be deferred if a party's right to appeal is adversely affected.* Where factual issues are involved in determining a motion, the court shall state its essential findings on the record.

(f) Effect of Failure to Raise Defenses or Objections. Failure by a party to raise defenses or objections or to make requests *which must be made prior to trial*, at the time set by the court pursuant to subdivision (c), or prior to any extension thereof made by the court, *shall consti-*

*tute waiver thereof,* but the court for cause shown may grant relief from the waiver. (Emphasis supplied.)

Rule 12 of the Tennessee Rules of Criminal Procedure was adopted verbatim from Rule 12 of the Federal Rules of Criminal Procedure. The Federal courts, in construing the rule, have uniformly held that absent "cause shown" the failure to file a pre-trial motion to suppress evidence constitutes a waiver of the right to object. See 8 *Moore's Federal Practice,* § 12.03 (2d ed. 1979); *1 Wright, Federal Practice and Procedure: Criminal,* § 191–193 (Supp.1979). The holdings in the Federal cases are in accord with the clear language of the rule.

There are many valid reasons underlying the practice of requiring pre-trial motions. It avoids interrupting a trial in progress with auxiliary inquiries which break the continuity of the jury's attention and it avoids inconveniencing jurors and witnesses by requiring them to stand by idly while the court hears a motion to suppress. The practice prevents mistrials from the jury's exposure to unconstitutional evidence. It is to the advantage of both the prosecution and defense to know prior to trial whether certain items will or will not be admitted into evidence. Granting the pre-trial motion might result in abandonment of the prosecution; if the pre-trial motion is denied, then the defendant may either plead guilty and gain whatever concession might be obtained from the State, or change his trial strategy.

■ Further, the consideration of a motion to suppress after the beginning of the trial can adversely affect the State's right to appeal an adverse ruling. When a pre-trial judgment is adverse to the State, the State's right to appeal is preserved. *State v. Johnson,* 569 S.W.2d 808, 811 (Tenn.1978); *State v. McCormick,* 584 S.W.2d 821, 824 (Tenn.Cr.App.1979); Rule 9 and 10, Tenn. Rules App.Pro. Jeopardy attaches when a jury is sworn. *Bell v. State,* 220 Tenn. 685, 423 S.W.2d 482, 485 (1968); *King v. State,* 216 Tenn. 215, 391 S.W.2d 637, 640 (1965). This prevents an appeal by the State from a judgment suppressing evidence rendered af-

ter the beginning of a trial. Rule 12(e) expressly places a duty on a trial judge to determine the merits of a motion before trial.

■ The defendants allege that the special judge who signed the search warrant did not have jurisdiction because he was not properly designated as special judge. T.C.A. § 16–1114 (Supp.1979) provides in relevant part:

Where the judge finds it necessary to be absent from holding court, he may designate in writing, to be filed with the clerk of the court, a name of a special judge to hold court in his place and stead; said person shall be a person who has the qualifications of such a judge and who shall take the same oath and have the same authority as a regular judge to hold court for the occasion.

The records of the General Sessions Court contain both an order designating Paul Chastain as Special Judge and an oath taken by Mr. Chastain as General Sessions Judge. Mr. Chastain signed the search warrant on the day that the record reflects he was sitting as a special judge.

A court clerk who had no personal knowledge of Mr. Chastain's appointment was the only witness who gave evidence concerning his appointment. She testified that it was the custom of the regular judge, when he expected to be out of town, to leave several signed orders in the clerk's office with the name of the special judge to be appointed left blank. Since the judge had no secretarial help, he would designate attorneys to be appointed and the clerk, the regular judge, or the regular judge's administrative assistant would notify the attorney of his appointment and, when the special judge assumed office, his name would be written into the blank space left in the pre-signed order. The clerk did not select special judges, this was personally done by the regular judge.

The defendants did not call the clerk who took Mr. Chastain's oath, the regular judge or Mr. Chastain as witnesses. Apparently, the motion to suppress caught the State by

surprise and the State did not have any of these parties available as witnesses. There is no evidence concerning the specific appointment of Mr. Chastain.

The trial judge held that there was no evidence that the regular General Sessions Judge did not designate the person who would sit for him as special judge on the date of the issuance of the search warrant. The trial judge also held that the regular General Sessions Judge designated attorneys who would sit as special judge and that the filling in of the name of the special judge was a clerical function which § 16–1114 (Supp.1979) does not require that the regular General Sessions Judge personally perform. The trial judge held there was a substantial compliance with T.C.A. § 16–1114 (Supp.1979). The record supports this finding.

The defendants rely upon *Steadman v. State*, 217 Tenn. 598, 399 S.W.2d 756 (1966) in which the Supreme Court held a special judge's appointment to be invalid because the Clerk of the General Sessions Court had designated and appointed special judges when the Private Act regulating the special judge provided that special judges must be elected by the lawyers present at court. We do not have the same factual situation before us as was present in the *Steadman* case. The record of the General Sessions Court reflects the regular and lawful appointment and qualification of the special judge. The record before us supports the finding of the trial judge that the presumption of correctness of the General Sessions Court records has not been rebutted by the evidence.

The defendants next insist that the search warrant does not particularly describe the property to be searched, and therefore is invalid. The description reads as follows:

"a two-story, frame, unpainted farmhouse located directly across from the Star Grocery on Lone Star Road, Route 4, in Sullivan County, Tennessee, said farmhouse being located on Lone Star Road approximately *one-half mile from the intersection of Lone Star Road and Reser-voir Road*, traveling in a southeasterly direction from said intersection on the right side of Lone Star Road. (Emphasis supplied.)

The evidence is clear that the description in the search warrant particularly points to a definitely ascertainable place so as to exclude all others and enables the officers to locate the place to be searched with reasonable certainty. However, one officer estimated that the distance from the farmhouse to the intersection of Lone Star Road and Reservoir Road was between one and one-half miles; another officer estimated this distance to be from three and one-half to four miles. As indicated, the search warrant approximates this distance as being one-half mile; this discrepancy in the distance from the farmhouse to the intersection is the basis for the defendant's attack on the description in the warrant.

In *Hatchett v. State*, 208 Tenn. 399, 346 S.W.2d 258, 259 (1961), the Supreme Court, in considering a similar question, said:

The rule is that the property to be searched must be particularly described in the search warrant before it is valid. The test is whether, or not, the description will enable an officer to locate the place to be searched with reasonable certainty.

We have held that the describing of the place to be searched by naming the occupant satisfies the above-mentioned test. *O'Brien v. State*, 158 Tenn. 400, 14 S.W.2d 51; *Webb v. State*, 173 Tenn. 518, 121 S.W.2d 550; *Garrett v. State*, 194 Tenn. 124, 250 S.W.2d 43.

The description directed the officers to the residence of the defendant on the old Perryville Road about one and three-fourths miles from Lexington. It is true that the distance from the Court House is about a mile off of the distance to the defendant's home, but the officers could by inquiring identify the premises described in the warrant. *Webb v. State*, supra.

On authority of the *Hatchett* case, we hold that an inaccuracy of distance in the description will not invalidate a search

warrant if the description contained in the warrant will enable an officer to locate the place to be searched with reasonable certainty and points to a definitely ascertainable place so as to exclude all others. *Thompson v. Carson*, 186 Tenn. 170, 208 S.W.2d 1019, 1020 (1948). The description in the warrant meets this requirement.

■ While we think the trial judge should have overruled the motion to suppress for failure to comply with Rule 12, Tenn.Rules Crim.Pro., we affirm his overruling the motion on its merits.

Finally, the defendant, Jonas, says that the trial court erred in not allowing his attorney to show the exhibits to the jury during closing argument. Immediately before his argument, Jonas's attorney asked the court reporter for the exhibits. At a bench conference immediately called by the trial court, the court held:

THE COURT: The Court rule is, based upon the law, is exhibits cannot be used or read from in arguments to the jury in a criminal case unlike in a civil case. It's the law that after all the evidence is presented, then the use of any particular piece of evidence tends to overemphasize that evidence, and so I follow the rule that exhibits cannot be used in arguments to the jury and instruct the Court Reporter to lock them up at the end of all the evidence.

■ We do not agree that exhibits cannot be used by counsel during closing arguments in criminal cases. The practice of using exhibits in argument is common and accepted in this state. The practice is sanctioned by our Supreme Court. *Kirkendoll v. State*, 198 Tenn. 497, 281 S.W.2d 243, 254 (1955). There is no policy prohibiting an attorney from emphasizing evidence in final argument. Any local rule of court prohibiting the use of exhibits by counsel in final argument is contrary to law and hence invalid. *Richie v. Liberty Cash Grocers, Inc.*, 63 Tenn.App. 311, 471 S.W.2d 559, 560 (1971).

■ In considering the whole record, we do not find that the error probably affected the judgment. The State's evidence is strong, clear, and uncontradicted. Counsel desired to again read to the jury a pre-trial statement given by a State witness to argue its discrepancies with the witness' testimony. The trial judge permitted counsel to refresh his memory of the contents of the exhibit immediately before argument. The jury had heard the statement read and the witness was cross-examined with reference to the discrepancies. Under these circumstances, we are quite satisfied that the error did not affect the judgment or result in prejudice to the judicial process. Rule 36(b), Tennessee Rules of Appellate Procedure.

We affirm the judgments of the court below.

WALKER, P. J., and DUNCAN, J., concur.