IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs October 28, 2003

## CRAIG STEPHEN BOURNE v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Sullivan County**
**No. C46,232     R. Jerry Beck, Judge**

_____

**No. E2003-00462-CCA-R3-PC**
**March 18, 2004**
_____

The petitioner, Craig Stephen Bourne, appeals the Sullivan County Circuit Court's denial of his petition for post-conviction relief from his convictions for especially aggravated kidnapping, attempted second degree murder, and aggravated burglary and effective thirty-two-year sentence. The petitioner claims that he received the ineffective assistance of counsel because his attorneys (1) failed to raise the issue of double jeopardy; (2) failed to raise the issue of the trial court's interference during plea negotiations; (3) failed to raise the issue that the trial court gave the jury inaccurate instructions on release eligibility dates; (4) failed to challenge a jury instruction on a crime that was not included in the indictment in his motion for a new trial; and (5) failed, in the petitioner's motion for a new trial, to challenge the trial court's denial of trial counsel's motion to withdraw before trial. We affirm the trial court's denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and ALAN E. GLENN, J., joined.

Charles R. Martin, Kingsport, Tennessee, for the appellant, Craig Stephen Bourne.

Paul G. Summers, Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; H. Greeley Wells, Jr., District Attorney General; and Joseph E. Perrin, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

This case relates to the petitioner's attack on his ex-girlfriend in 1996. The record reflects that the petitioner was sentenced to twenty-five years for the especially aggravated kidnapping conviction, eight years for the attempted second degree murder conviction, and six years for the aggravated burglary conviction. The especially aggravated kidnapping sentence was ordered to be served concurrently to the aggravated burglary but consecutively to the attempted second degree murder for an effective thirty-three-year sentence. A jury convicted the petitioner, and this court

affirmed the convictions.  See State v. Craig Stephen Bourne, No. 03C01-9807-CR-00237, Sullivan County (Tenn. Crim. App. Oct. 18, 1999), app. denied (Tenn. Apr. 24, 2000).  However, this court modified the petitioner's sentence to thirty-two years.  On appeal, this court stated the following facts:

> The victim, Karen Suzette Zimmer, and the defendant dated for approximately three years until August of 1996.  Their relationship ended, according to the victim, because the defendant had struck her on two different occasions.  The victim, who worked in Morristown part-time as a substitute school teacher and part-time as a waitress at Scooter's Restaurant, had two sons, ages twenty and twenty-four, by a prior marriage at the time of the offense.

> At approximately 10:00 to 10:30 P.M. on October 25, 1996, the victim returned from her work at the restaurant.  Both of her sons had gone camping that night and were away from the residence.  At approximately midnight, the victim went to bed.  Shortly after 2:30 A.M., she was suddenly awakened by the defendant who, according to the victim, grabbed her by the hair and said, "Get up, bitch, I'm going to kill you."

> At trial, the victim testified that the defendant had telephoned her several times on the evening prior to the assault.  Finally, the victim left the receiver off the telephone when the defendant persisted in the use of abusive language.  Later, the defendant somehow entered the residence and awoke the victim.  After slapping her twice, the defendant struck her with a clenched hand, claiming that was the first time he "ever hit a woman with his fists."  The victim recalled the defendant saying that he did not "have anything to live for" and that he intended to slit her throat before committing suicide.  She remembered that the defendant took a knife from his pocket, unfolded it, continued to strike her, and then cut her head, causing a wound on her forehead from the hairline to an eyebrow, which eventually required twelve stitches to close.  The victim remembered grabbing at the knife with her hand, causing a cut across her palm and the last two fingers, which ultimately required fifteen stitches.  During the course of events, the victim also recalled receiving small cuts to the crown of her head.  She was forced to look at herself in a full-length mirror and, as she did so, the defendant, who held her by her hair, smashed her head into the mirror.

> The victim related that the episode continued for hours, during which the defendant would alternately talk a while, get upset, and

strike the victim again. At one point, the defendant dragged the victim to the kitchen so he could get a beer and then "flung [her] down on the couch in the living room and kicked over the coffee table," striking her "once or twice more" before returning her to the bedroom. Later, the defendant said to the victim, "Get down over there . . . I'll give you a minute to make peace with your maker." The victim recalled attempting to talk the defendant "out of this" after which the defendant observed, "Your lips are blue, you know what that means, don't you?"

By this time, the victim had lost quite a bit of blood and the defendant, who went to the kitchen to get another beer, left her alone in the bedroom. The victim testified that she escaped by running out her front door and to the residence of her neighbor, Tonya Renee Terry. The victim recalled "banging" on the outside of the door, after which Ms. Terry pulled her inside and called the police. The victim sustained other injuries which included two black eyes, a cut lip, and a chipped tooth. Three small, color photographs taken shortly after the arrival of police reflected to a degree the extent of her visible injuries and the extent of her blood loss.

Id., slip op. at 3-5.

At the post-conviction evidentiary hearing, the petitioner testified that his trial attorney only met with him three to four times before trial. He said that his attorney should have emphasized that the petitioner put the knife away after the victim was cut, that there were limited blood stains at the victim's house, and that he did not drag the victim throughout the house. He said his attorney should have talked to the victim before he was scheduled to enter a best interest plea, i.e., a plea that he considered in his best interest even though he denied committing the offenses. The record reflects that the plea offer was for the petitioner to plead guilty to kidnapping, attempted second degree murder, and aggravated burglary and receive an effective twelve-year sentence. On cross-examination, the petitioner acknowledged that his attorney filed several motions before trial, including suppression and discovery motions. He admitted that he told the victim that he should cut her throat. He acknowledged that his attorney kept him well informed on his court proceedings. He acknowledged that when asked by the trial court if his plea was voluntary and knowing, he told the court that he thought his attorney should have contacted the victim. He said, though, that he knew the victim was not required to speak with his attorney. He said he believed it was wrong for the state to withdraw the plea offer. He said his trial attorney did what he was supposed to do in preparing for his case.

The petitioner's trial attorney testified that he met with the petitioner several times, gave the petitioner his file, and made various motions on his behalf. He said he tried unsuccessfully to contact the victim three times before the scheduled plea hearing. He said that at the plea hearing,

-3-

the petitioner told the trial court that he believed his attorney should have interviewed the victim. He said that the court stopped the proceedings at that time and that the state withdrew its plea offer the next day. He said that he objected to the withdrawal but that his objection was overruled by the court. He said that he contacted the victim after the hearing but that she did not want to talk to him. On cross-examination, the trial attorney testified that he did not remember if he discussed the strategical advantages of the petitioner taking the stand. He said he did not object to the release eligibility dates given by the court because he believed that they were accurate.

The petitioner's appellate attorney testified that he raised ten issues in the petitioner's direct appeal of his conviction, including whether the trial court erred by allowing the prosecution to withdraw its plea offer. He said he wrote several letters to the petitioner explaining the process. He said that in deciding which rulings to challenge on appeal, he looked mainly at the issues raised in the petitioner's motion for a new trial.

The trial court denied the petition for post-conviction relief. The trial court found that the petitioner's double jeopardy claim was not properly before the court because the issue had been raised by counsel and rejected by this court in the petitioner's direct appeal. The court also found that double jeopardy would not apply because the trial court stopped the guilty plea hearing before accepting the plea agreement. In addition, the trial court determined that its statements to the jury regarding release eligibility dates were correct. The trial court noted that even if the dates were wrong, it would be harmless error in light of the overwhelming evidence against the petitioner. Finally, the trial court determined that overall, the petitioner had failed to prove by clear and convincing evidence that his attorneys were ineffective.

Under the Sixth Amendment, when a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial in terms of rendering a reasonable probability that the result of the trial was unreliable or the proceedings fundamentally unfair. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72, 113 S. Ct. 838, 842-44 (1993). The Strickland standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

In Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975), our supreme court decided that attorneys should be held to the general standard of whether the services rendered were within the range of competence demanded of attorneys in criminal cases. Further, the court stated that the range of competence was to be measured by the duties and criteria set forth in Beasley v. United States, 491 F.2d 687, 696 (6th Cir. 1974), and United States v. DeCoster, 487 F.2d 1197, 1202-04 (D.C. Cir. 1973). Also, in reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689, 104 S. Ct. at 2065; see Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). Thus, the fact that a particular strategy or tactic failed or even hurt the defense does not, alone, support a claim of ineffective assistance. Deference is made to trial strategy

or tactical choices if they are informed ones based upon adequate preparation. See Hellard, 629 S.W.2d at 9; DeCoster, 487 F.2d at 1201.

In a post-conviction case, the burden is on the petitioner to prove by clear and convincing evidence his grounds for relief. T.C.A. § 40-30-110(f) (2003). On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. Id. at 457.

We observe that the petitioner has not made the trial transcript containing the trial court's November 25, 1998 instructions to the jury and the June 18 and 19, 1997 plea hearings as part of the post-conviction record. It is his duty to present a full record in this appeal. However, we may take judicial notice of the record in the appeal of the petitioner's conviction. See State ex rel. Wilkerson v. Bomar, 213 Tenn. 499, 505, 376 S.W.2d 451, 453 (1964).

## I. DOUBLE JEOPARDY

The petitioner claims that double jeopardy attached when the prosecution withdrew the plea agreement, that his trial attorney was ineffective for failing to raise this issue in the petitioner's motion for a new trial, and that his appellate attorney was ineffective for failing to raise this issue in the petitioner's appeal. The state contends jeopardy did not attach when the prosecution withdrew its plea offer because the trial court had already rejected the petitioner's plea after questioning the petitioner at the plea hearing.

We note that in the appeal of his convictions, the petitioner claimed the state breeched a contract by withdrawing the plea offer upon the trial court's rejection of the offer. The trial court rejected the plea agreement after the petitioner told the court at the plea hearing that his trial attorney should have interviewed the victim. This court ruled against the petitioner, concluding that the trial court was within its discretion in rejecting the petitioner's plea. See Stephen Craig Bourne, slip op. at 6-9. The court also held that an offer by the state is revocable until it is accepted by the trial court. Id., slip op. at 8; see also State v. Williams, 851 S.W.2d 828, 830-32 (Tenn. Crim. App. 1992). In Bell v. State, 220 Tenn. 685, 423 S.W.2d 482 (1968), our supreme court concluded that "[t]he essential element of a valid plea of double jeopardy is that the record should disclose that the defendant was lawfully convicted or acquitted of the offense for which he was indicted and called upon to answer." In State v. Sluder, 493 S.W.2d 467, 470 (Tenn. 1973) (quoting Holt v. State, 160 Tenn. 366, 371, 24 S.W.2d 886, 887 (1929)), the court stated:

> "The [double jeopardy] rule is designed to protect the individual, obnoxious to the government, from successive harassing prosecutions for a single offense. . . ." [T]he entry of a plea of guilty in and of itself

is not a bar to a subsequent prosecution for the same or higher offense without some judicial action upon the plea in a judicial sense.

In the present case, there were no successive prosecutions and the defendant was not "lawfully convicted" upon his attempted plea. Jeopardy did not attach at the attempted plea hearing and, therefore, the petitioner's attorneys were not ineffective for failing to raise this issue at trial or on appeal.

## II. JUDICIAL INTERFERENCE IN PLEA NEGOTIATIONS

The petitioner claims that his attorneys were ineffective by failing to challenge the trial court's interference in his plea negotiations with the state. After the trial court rejected the plea agreement, the prosecution talked with the victim and decided to withdraw its offer. In a hearing on June 19, 1997, the petitioner's attorney requested that the trial court reinstate the plea agreement that the court had rejected the previous day. The court asked the petitioner if he had wanted to withdraw the plea agreement that the court had rejected, to which the petitioner responded that he did not. The court, summarizing the agreement from the failed plea, stated: "All right. Now, the Defendant – under the plea agreement, the Defendant was originally charged with a Class A felony offense. The agreement that had been submitted to the Court in writing provided for a Class B disposition, Class B felony." The petitioner's trial attorney then informed the court that the Class A felony had actually been reduced to a Class C felony under the agreement. The court then said that he would allow the petitioner to plead guilty as charged in the indictment and the petitioner's attorney responded that the petitioner did not want to do this. The court then denied the petitioner's request that the plea agreement be reinstated.

The petitioner argues that the court attempted to influence the state in its subsequent plea negotiations in violation of Tennessee Rule of Criminal Procedure 11(e)(1). Rule 11(e)(1) provides as follows:

> In General. The district attorney general and the attorney for the defendant or the defendant when acting pro se may engage in discussions with a view toward reaching an agreement that, upon the entering of a plea of guilty or nolo contendere to a charged offense or to a lesser or related offense, the district attorney general will do any of the following:
>
> (A) move for dismissal of other charges; or
>
> (B) make a recommendation, or agree not to oppose the defendant's request, for a particular sentence, with the understanding that such recommendation or request shall not be binding upon the court; or

(C) agree that a specific sentence is the appropriate disposition of the case.

The court shall not participate in any such discussions.

The comments by the trial court do not indicate an intent to interfere with or participate in plea negotiations. The court merely stated that the petitioner had been charged originally with a Class A felony and that he was now willing to plead guilty to a Class B felony. The state routinely offers reduced charges to defendants in order to avoid trials. The court was only restating the failed plea agreement in this case. The petitioner's attorneys were not ineffective for failing to raise this issue.

## III. RELEASE ELIGIBILITY INSTRUCTIONS

The petitioner contends that the trial court erred in its instructions to the jury on release eligibility rates for his attempted second degree murder, aggravated burglary, and especially aggravated kidnapping convictions and that his attorneys were ineffective for failing to raise this issue. The state contends that the jury instructions on release eligibility dates were correct.

### A. Attempted Second Degree Murder and Aggravated Burglary

Relying on T.C.A. § 40-35-201 (repealed 1998), the trial court instructed the jury that the minimum amount of time the defendant could serve for an attempted second degree murder conviction would be ninety-five percent of a year. He calculated this number based on the minimum eight-year sentence for attempted second degree murder served at a thirty-percent rate as a Range I offender, or 2.4 years. The court then reduced the 2.4 years to .95 years by taking into account other possible sentence reduction credits so it could reach an approximate calculation of the actual earliest release possibility. Using information from the Administrative Office of the Courts to calculate possible sentence reduction credits, the court arrived at ninety-five percent of a year as the minimum amount of time that the petitioner would be required to serve if convicted of second degree murder. T.C.A. § 40-35-201(b) provided, in pertinent part:

(b)(1) In all contested criminal cases . . . upon the motion of either party . . . the court shall charge the possible penalties for the offense charged . . . .

(2)(A)(i) When a charge as to possible penalties has been requested pursuant to subdivision (b)(1), the judge shall also include in the instructions for the jury to weigh and consider the meaning of a sentence of imprisonment for the offense charged and any lesser included offenses. Such instruction shall include an approximate calculation of the minimum number of years a person sentenced to imprisonment for the offense charged and lesser included offenses must serve before reaching such person's earliest release eligibility

-7-

date. Such calculation shall include such factors as the release eligibility percentage established by § 40-35-501, maximum and minimum sentence reduction credits authorized by § 41-21-236 . . . .

(Repealed 1998).

Under T.C.A. § 40-35-201(b)(2)(A)(i) (repealed 1998), the trial court correctly used possible sentence reduction credits to calculate the approximate minimum amount of time the petitioner could serve for an attempted second degree murder conviction. Because the trial court instructed the jury on the minimum amount of time the petitioner would have to serve for an aggravated burglary conviction in the same manner as it did for attempted second degree murder, this instruction was also correct.

### B. Especially Aggravated Kidnapping

The court instructed that the petitioner's minimum sentence for an especially aggravated kidnapping conviction was 12.75 years, fifteen percent less than the petitioner claims a person convicted of especially aggravated kidnapping is eligible to receive. Based on the holding in State v. Meyer, 994 S.W.2d 120 (Tenn. 1999), the petitioner claims that the trial court erred by including sentence reduction credits in its calculation. He asserts that like the defendant in Meyer who was convicted of rape of a child, a defendant convicted of especially aggravated kidnapping is not eligible for sentence reduction credits. Thus, he states that the trial court erred by instructing the jury that the petitioner could serve less than one hundred percent of the fifteen- to twenty-five-year sentence that a Range I offender is required to serve.

In Meyer, the Tennessee Supreme Court concluded that it was reversible error for a trial court to instruct a jury that the minimum sentence for a defendant convicted of rape of a child could be served at less than a one hundred percent rate. 994 S.W.2d at 131; see also T.C.A. §§ 40-35-501(i)(3), 39-13-523(b) (Supp. 1995). Meyer, however, relied upon T.C.A. § 39-13-523, which provides that a child rapist is not eligible for sentence reduction credits. In contrast, a defendant convicted of especially aggravated kidnapping is eligible to receive a fifteen percent sentence reduction pursuant to T.C.A. § 40-35-501(i)(1). The aggravated kidnapping statute, T.C.A. § 39-13-305, unlike the rape of a child statute, does not mandate that a defendant be denied sentence reduction credits. The trial court found correctly that, if convicted of especially aggravated kidnapping, the petitioner's sentence could be reduced by fifteen percent using sentence reduction credits. Because the trial court instructed the jury correctly, the petitioner's attorneys were not ineffective for failing to raise this issue.

### IV. ATTEMPTED SECOND DEGREE MURDER INSTRUCTION

The petitioner claims that the trial court erred in instructing the jury on attempted second degree murder because it included subsections (1), (2), and (3) of T.C.A. § 39-12-101(a) by which

a jury could find that an "attempt" occurred. The petitioner contends that based on the wording of the charging instrument, the jury should have only been able to convict the petitioner of attempted second degree murder under subsection (3) of the statute, not subsections (1) and (2). He asserts that his trial counsel was ineffective by not raising this issue in his motion for a new trial. The state claims that the issue is waived because the petitioner failed to include the jury instructions in the record in this appeal, that the issue should have been raised in the petitioner's first appeal, and that the petitioner has shown no prejudice as a result of the instruction. As discussed above, although the petitioner did not include the jury instructions, we may take judicial notice of the record. See Bomar, 213 Tenn. at 505, 376 S.W.2d at 453. In addition, the state is incorrect in its assertion that this issue should have been raised in the petitioner's first appeal and is not properly before us. The petitioner's claim is that he received the ineffective assistance of counsel because his trial attorney failed to challenge an erroneous jury instruction on attempted second degree murder. If the petitioner can show that his trial counsel was deficient for failing to raise this issue and it resulted in the proceedings being unreliable or fundamentally unfair, he is entitled to relief in this post-conviction appeal. See Strickland, 466 U.S. at 687, 104 S. Ct. at 2064.

In determining whether the petitioner's trial counsel was ineffective for failing to challenge the trial court's instruction on attempted second degree murder, the approach to the issue does not have to start with an analysis of the attorney's conduct. If prejudice is not shown, we need not seek to determine the validity of the allegations about deficient performance. Strickland, 466 U.S. at 697, 104 S. Ct. at 2069. In order to establish prejudice, the defendant must show that a reasonable probability exists that "'but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" State v. Burns, 6 S.W.3d 453, 463 (Tenn. 1999) (quoting Strickland, 466 U.S. at 694, 104 S. Ct. at 2068) (citations omitted).

In the present case, the petitioner has presented no evidence of prejudice. He offered no proof at the evidentiary hearing as to how the result in his case would have been different if the trial court had only instructed the jury on subsection (3) of the statute when defining an "attempt." See T.C.A. § 39-12-101(a). In addition, proof of the petitioner's guilt for attempted second degree murder was overwhelming. The petitioner told the victim several times that he was going to kill her. He then cut the victim on her hands and forehead and threw her head into a mirror. During the attack, he told the victim he would give her a few moments to "make peace with [her] maker." At the post-conviction hearing, the petitioner acknowledged that he told the victim he was going to slit her throat. We are unable to conclude that trial counsel's claimed deficiencies "so undermined the proper functioning of the adversarial process that the jury's verdict was not a just result." See Strickland, 466 U.S. at 686, 104 S. Ct. at 2064.

## V. MOTION TO WITHDRAW

The petitioner contends that the trial court erred by denying his trial counsel's motion to withdraw from the case. He claims that because his trial counsel's ineffectiveness resulted in the trial court's rejection of the plea agreement, the trial court should have granted trial counsel's motion

to withdraw. He claims that his trial counsel was ineffective for failing to raise the issue of his own ineffectiveness in the petitioner's motion for a new trial. The state claims that the petitioner has not shown any prejudice resulting from his trial attorney's representation and that, therefore, he did not receive the ineffective assistance of counsel on this issue.

As discussed, the trial court rejected the plea agreement between the petitioner and the state when the court was questioning the petitioner to determine if his plea was knowing and voluntary and the petitioner said that his attorney should have interviewed the victim. After the state had withdrawn the plea agreement and the trial court had ruled that it would not reinstate it, the court denied counsel's motion to withdraw from the case. The gist of the petitioner's argument is that his trial attorney was ineffective for failing to interview the victim, which led to the petitioner's interjection at the plea hearing and the subsequent rejection of the plea by the court. The trial attorney testified, however, that he tried to contact the victim on three separate occasions but was unable to make contact. He said that once the court began its inquiry into the voluntariness of the petitioner's plea, there was little he could do once the petitioner decided to complain. He said that he did not believe he was ineffective in the petitioner's case and that there was no conflict in his continued representation of the petitioner. We see no evidence that the petitioner's trial attorney was ineffective as claimed by the petitioner. Therefore, there was no need for the petitioner to raise this issue in the motion for a new trial. We hold that the trial court properly rejected the petitioner's claim for post-conviction relief.

Based on the foregoing and the record as a whole, we affirm the trial court's denial of the petition.

_____
JOSEPH M. TIPTON, JUDGE